Tamara LAGERWEY, Appellant,

v.

Harvey LAGERWEY, Appellee.

No. 7606.

Supreme Court of Alaska.

April 6, 1984.

Carl A. Larson, Kenai, for appellant.
Harvey Lagerwey, pro se.

Before BURKE, C.J., and RABINOW-
ITZ, MATTHEWS, COMPTON and
MOORE, JJ.

## OPINION

PER CURIAM.

Tamara and Harvey Lagerwey were di-
vorced in the state of Washington in 1978.
Harvey was ordered to pay $125 per month
for each of the couple's two children as
child support.

Harvey continues to reside in Wash-
ington. Tamara is now an Alaska resident.
On August 3, 1982, Tamara filed a motion
in the superior court to obtain an Alaska
judgment for arrears on the Washington
divorce decree. The motion cited AS 25.-
25.258 as authority. A copy of the motion
was served on Harvey by registered mail.
The motion was denied on the ground that
the Alaska Superior Court lacks personal
jurisdiction over Harvey.

In this petition for review, Tamara ar-
gues that in a proceeding under the Uni-
form Reciprocal Enforcement of Support
Act [URESA], AS 25.25.010–.258, the initia-
ting state need not have personal jurisdic-
tion over the obligor. She contends, if
personal jurisdiction is required, it exists in
this case because URESA confers personal
jurisdiction and because the obligor has the
necessary minimum contacts with the state
of Alaska.

## I.

### A. Necessity of Personal Jurisdiction

Tamara argues that in *Kulko v. Califor-
nia Superior Court,* 436 U.S. 84, 98 S.Ct.
1690, 56 L.Ed.2d 132 (1978), the United
States Supreme Court approved the use of
a URESA action to proceed against a non-
resident obligor despite a lack of personal
jurisdiction over the obligor in the initiating
state.

In relying on *Kulko,* Tamara equates her
attempt to obtain an Alaska judgment for
arrears on a foreign divorce decree with
the initiation of an action in Alaska to
obtain a similar judgment in a responding
state. *Compare* AS 25.25.090, –.120, –.180
*with* AS 25.25.254, –.258. *Kulko* itself il-
lustrates the significance of the difference.
In *Kulko,* a California resident brought a
non-URESA suit in California to domesti-
cize and modify a Haitian divorce decree.
The Supreme Court held that the suit could
not proceed in California because the
courts there lacked personal jurisdiction
over the obligor, a resident of New York.
The Court observed that the California obli-
gee could have used an URESA action to
obtain a judgment in a New York court,
however. 436 U.S. at 86–91, 98–102, 98
S.Ct. at 1693–1696, 56 L.Ed.2d at 138–140,
145–147.

In the URESA cases cited by Tamara, an
obligee in a state foreign to the state which
issued a support order invoked URESA in
order to obtain a judgment against an obli-
gor in the state of his residence, where

there obviously is personal jurisdiction. In such cases, although the initiating state may lack personal jurisdiction over the obligor, it is in the courts of the responding state—the state of the obligor's residence—that the judgment is obtained or the decree is modified. When URESA is invoked in this fashion it is simply a device by which an obligee can litigate a duty of support in the obligor's home state without having to travel there or hire an attorney there to do so, as the Supreme Court recognized in *Kulko*. 436 U.S. at 99, n. 14, 98 S.Ct. at 1700, n. 14, 56 L.Ed.2d at 146, n. 14. Lack of personal jurisdiction in the initiating state is of no consequence in such a situation.

■ To the extent that the relief sought by Tamara was for an adjudication to determine the amount of arrears owed in the state of Harvey's residence, pursuant to AS 25.25.080, personal jurisdiction was thus no bar to the action.[1] Therefore, the proper role of the Alaska court in that situation was to forward her motion to another jurisdiction in accordance with AS 25.25.120.[2]

■ However, to the extent that Tamara sought to register and enforce the Washington decree pursuant to AS 25.25.-254–.258, a different analysis applies. Under these provisions, an obligee can *register* a judgment in Alaska, regardless of the obligor's presence in this state and regardless of whether the obligor has sufficient minimum contacts with this state to satisfy due process. *See Fleming v. Fleming*, 49

N.C.App. 345, 271 S.E.2d 584 (1980); *Pinner v. Pinner*, 33 N.C.App. 204, 234 S.E.2d 633 (1977). Following registration, the judgment may be enforced as if rendered locally. AS 25.25.258(a). Enforcement, however, can affect the obligor's rights, and the propriety of enforcing the order without personal jurisdiction must be separately considered. *Pinner* is directly on point in this regard. In that case, a North Carolina obligee sought to register and enforce in North Carolina a Florida divorce decree against an obligor residing in Pennsylvania. The court stated:

> The mere registration of a foreign support order presented by the obligee under [URESA] is a ministerial duty of the clerk. By that act no court or agency of the state is purporting to exercise power over the obligor or his property. Registration does not prejudice any rights of the obligor; it merely changes the status of the foreign support order by allowing it to be treated the same as a support order issued by a court of North Carolina. Once the order is so treated the obligee or the obligor may request modifications in the order, and *when the obligee attempts to enforce the order, the court must determine whether jurisdiction exists over the person or property of the obligor and what amount, if any, is in arrears.* W. Brockelbank, *Interstate Enforcement of Family Support (The Runaway Pappy Act)*, pp. 77–87 (Infausto ed. 1971).

234 S.E.2d at 636 (citation omitted; emphasis added). *See also*, Kelso, *Reciprocal*

---

1. AS 25.25.080 provides:
   (a) Jurisdiction for all proceedings under this chapter is in the superior court.
   (b) All duties of support, including the duty to pay arrears, are enforceable by a proceeding under this chapter, including a proceeding for civil contempt. The defense that the parties are immune to suit because of their relationship as husband and wife or parent and child is not available to the obligor.

2. AS 25.25.120 provides:
   If the court of this state, acting as an initiating state, finds that the complaint sets out facts from which it may be determined that the defendant owes a duty of support and that a court of the responding state may obtain jurisdiction of the defendant or the defendant's property, it shall so certify and shall cause three copies of (1) the complaint, (2) its certificate, and (3) this chapter, to be transmitted to the court in the responding state. If the name and address of the court is unknown and the responding state has information agency comparable to that established in the initiating state, it shall cause the copies to be transmitted to the state information agency or other proper official of the responding state, with a request that it forward them to the proper court, and that the court of the responding state acknowledge their receipt to the court of the initiating state.

*Enforcement of Support: 1958 Dimensions*, 43 Minn.L.Rev. 875, 881–84 (1959).[3]

Tamara has not attempted to distinguish registration and enforcement of an order in this state, pursuant to AS 25.25.254–.258, from the initiation of a proceeding to invoke another state's enforcement powers pursuant to AS 25.25.090 and –.120. Her original motion appears to have been an attempt to register and enforce in Alaska the Washington support order.

■ To the extent that she complied with the requirements of AS 25.25.254(c), the order should have been registered in compliance with AS 25.25.254(b) and (d). To the extent that she initiated the proceeding below to invoke the assistance of the Washington courts in obtaining satisfaction for the alleged arrears, pursuant to AS 25.25.-080 and –.120, her complaint should have been forwarded to the responding state in compliance with AS 25.25.120. However, Tamara did not distinguish these alternative approaches.

## B. Conferral of Jurisdiction by URESA

If the purpose of her pleading is to register the Washington judgment in Alaska, then we must turn to the question whether the superior court properly declined to issue a judgment for arrears. Tamara argues that personal jurisdiction was present because "URESA ... confer[s] jurisdiction of foreign judgments upon the Superior Court when filed under the procedures set forth therein." She adds, "[J]udgment shall not be refused recognition for lack of personal jurisdiction if, in effect, the foreign court had personal jurisdiction over the defendant."

This argument is in effect an argument that once a judgment is properly registered, it can be enforced without personal jurisdiction.[4]

■ In this case, the question is whether an Alaska court is authorized to issue a judgment for arrears on a properly registered foreign support order, without personal jurisdiction. If the foreign support order were retrospectively modifiable as to the amount due in the state of its issuance, then it would be improper for a court of this state to issue a judgment for arrears without first obtaining personal jurisdiction over the obligor and affording him an opportunity to litigate the propriety of such a modification. However, when the foreign support order is a final judgment entitled to full faith and credit in this state and the obligor has been properly notified so as to satisfy the due process clause, personal jurisdiction over the obligor is not a prerequisite to the issuance of a judgment for arrears. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Given a final and presumptively non-modifiable support order, issuance of a judgment for arrears is an exercise in arithmetic, nothing more.[5] It is when the obligee attempts to execute on property, attach wages, or otherwise *enforce* the judgment that the obligor's interests are affected. At that stage, a registering state can exercise *in rem* jurisdiction over the

---

3. The Kelso article relies on the 1958 amended URESA provisions, which more clearly state the distinction between registration and enforcement and the requirement of personal or *in rem* jurisdiction for enforcement. *See* Enforcement of Support, §§ 36 and 37, 9A U.L.A. 798–799 (1958). The 1968 revisions were intended merely to simplify this aspect of the Act: *see* commentary to Uniform Reciprocal Enforcement of Support Act, 1968 Revised Act, 9A U.L.A. 644 (1968).

4. Tamara Lagerwey also asserts that URESA confers personal jurisdiction so as to satisfy AS 09.05.015(2). However, she has not pointed to any specific statute in URESA which "specifically confers grounds for personal jurisdiction

over the defendant," as required by AS 09.05.-015(2). AS 25.25.080(a) is patently a grant of subject matter jurisdiction.

5. An Alaska court must presume the finality of the support in such a dissolution decree issued in another state. *Barber v. Barber*, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944).

Furthermore, Washington law clearly concurs that "accrued installments of child support owed pursuant to a dissolution decree are vested and cannot be retroactively modified." *Valley v. Selfridge*, 30 Wash.App. 908, 639 P.2d 225, 228, n. 2 (1982); *Koon v. Koon*, 50 Wash.2d 577, 313 P.2d 369, 371 (1957); Wash.Rev.Code Ann. § 26.09.170 (1973).

obligor's property in the state without any personal jurisdiction, so long as the obligor/judgment debtor is given an opportunity to respond by showing the judgment has been satisfied. *Id. Robbins v. Robbins,* 647 P.2d 589 (Alaska 1982); Alaska R.Civ.P. 69(d).[6]

## C. Minimum Contacts

Tamara's final argument is that a nonresident's failure to comply with a divorce decree affecting an Alaska resident is sufficient to justify the exercise of personal jurisdiction over a nonresident obligor.

 This is precisely the argument made in *Kulko,* and that case is dispositive to the contrary. Under the due process clause Alaska may not exercise personal jurisdiction over Harvey simply because his children live in Alaska and he owes an Alaska resident money under another state's divorce decree. These facts do not establish sufficient grounds for personal jurisdiction. The requisite minimum contacts between Harvey and Alaska do not exist. Harvey has not purposefully availed himself of any Alaskan benefits.

## II.

The order of the superior court dismissing Tamara's petition is vacated and this case is remanded. On remand, if she, the obligee, seeks to register the Washington decree of dissolution and reduce arrears to judgment, in compliance with AS 25.25.254, the superior court is to allow such registration and render an appropriate order. Upon the petitioning obligee's request, that registered order shall be transmitted to the responding state of the obligor's residence. Of course, in any proceeding to enforce such registered judgment, whether in the obligor's state of residence or in an *in rem*

action in Alaska, the obligor would be entitled to an opportunity to present available defenses, if any, as explained in AS 25.25.258(c).[7]

REVERSED and REMANDED.

---

6. *See* Unif. Enforcement of Foreign Judgments Act §§ 4–7, 13 U.L.A. 197–201 (1948). *See also* AS 09.35.030(1), (2), (4). These provisions authorize the issuance of writs of execution against the property of judgment debtors. A foreign judgment registered in Alaska, final under the full faith and credit clause, gives rise to a right to the issuance of such a writ. *See* AS 09.30.200, –.260.

7. Inasmuch as URESA must be interpreted in the light of the due process considerations articulated in *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the obligor should be allowed to present available defenses in his state of residence.