(74 P.3d 584)
No. 89,137

LINDA SUMMITT n/k/a LINDA GRUND, *Appellee*, v.
DANNY SUMMITT, *Appellant*.

Opinion filed August 15, 2003.

*William C. O'Keefe*, of Seneca, for appellant.

*Michael W. Murphy* and *Jason E. Brinegar*, of Galloway, Wiegers & Heeney, P.A., of Marysville, for appellee.

*Randy M. Barker*, for Kansas Department of Social and Rehabilitation Services.

Before ELLIOTT, P.J., MARQUARDT and MALONE, JJ.

MALONE, J.: Danny Summitt appeals the district court's judgment ordering him to pay $54,588 in child support arrearages and interest. The issues are whether the court lacked jurisdiction to order Danny to pay the arrearages and also whether any of the prior Kansas child support judgments became dormant and unenforceable. Finding no error, we affirm.

This case has a long history in both Kansas and North Carolina courts. In 1979, Linda Summitt (now Linda Grund) filed a petition for divorce from Danny in Marshall County District Court. Danny lived in North Carolina, but he consented to personal jurisdiction. The Kansas court granted a divorce in 1980. Linda was awarded custody of their two minor children, Kimberly (d.o.b. 7/6/73) and Kelly (d.o.b. 4/16/77). Danny was ordered to pay $20 per week alimony and $50 per week child support. Neither party appealed the divorce decree.

In 1984, a writ of execution was issued by the Kansas court for unpaid child support and alimony but was returned unsatisfied. The following year, Linda filed a petition pursuant to the Kansas Uniform Reciprocal Enforcement of Support Act (URESA), requesting an order by a North Carolina court for Danny to pay arrearages in child support and alimony. Linda also sought an increase in child support to $200 per month per child. The North Carolina court found Danny was in arrears only for alimony and not for child support, and that such arrearage required a separate civil suit for recovery. The court also entered its own order for child support in the amount of $346 per month. There was no appeal.

In 1986, Linda assigned all support rights to the Kansas Department of Social and Rehabilitation Services (SRS). This assignment remained in effect throughout the proceedings.

In 1987, Danny was granted custody of Kimberly. In 1989, the Kansas court modified Danny's child support obligation to $432 per month for Kelly only. In 1990, Linda attempted to enforce the modified child support order in North Carolina. The North Carolina court again found Danny was not in arrears as to child support and was under no further duty to provide child support for Kelly. There was no appeal.

In 1992, Danny was served with a notice of registration of foreign support order which showed he had an arrearage in child support payments. The North Carolina court held a hearing on Danny's motion to strike the notice and again found Danny was not in arrears in his child support payments. The court ordered the notice stricken, precluded it from being registered with the court, and dismissed the matter. There was no appeal.

In 1994, Kelly moved from Linda's home, was married, and moved to Nebraska. She graduated from high school in June 1995. In December 1995, Linda filed another petition to recover child support arrearages. In response, the North Carolina court again found Danny was not in arrears and dismissed the action. There was no appeal.

In 1998, an income withholding order was issued to Danny's employer in North Carolina for payment of past due child support. The North Carolina court found Danny was not in arrears and under no obligation to provide further support; accordingly, it refused to order Danny's employer to institute wage withholding. There was no appeal.

In 1999, Linda, through the district court trustee, filed a motion in Kansas to determine arrearages and to obtain another income withholding order. Danny filed a response raising several defenses, including statute of limitations, dormancy of judgment, and collateral estoppel. A hearing was conducted, and several of the North Carolina court's orders were admitted into evidence. The Kansas court rejected Danny's defenses and found he owed $44,673.53 in arrearages and interest as of December 31, 1998. Further, the

court found that another income withholding order should be issued to Danny's employer. There was no appeal.

Finally, in June 2001, Linda filed another motion in Kansas to determine arrearages. After a hearing, the court found the amount of arrearages and interest had grown to $54,588 as of June 1, 2001. The court rejected Danny's contention that any of the Kansas judgments had become dormant. The court found the North Carolina court only had jurisdiction to refuse to register the Kansas orders, and, accordingly, it exceeded its jurisdiction by taking any further action. Further, the court found because Kansas maintained continuing exclusive jurisdiction over the Kansas child support orders, the North Carolina decisions were not entitled to full faith and credit to the extent they attempted to modify the Kansas orders.

Danny filed a motion for new trial or, in the alternative, a motion to alter or amend the judgment. In response, the court filed an amended journal entry on May 24, 2002, but did not alter the amount owed by Danny. Danny timely appeals.

Danny argues the Kansas court was without jurisdiction to order him to pay the child support arrearages because Linda submitted the matter to the North Carolina court, which found he was not in arrears. According to Danny, the North Carolina decisions nullified the Kansas orders, and Linda's failure to appeal any of the North Carolina decisions rendered that court's findings res judicata as to whether he owed arrearages. Danny further argues that even if the Kansas court had jurisdiction to determine the arrearages, the Kansas child support judgments had become dormant and unenforceable.

Linda and SRS argue the North Carolina orders did not nullify the Kansas orders, and because Danny failed to appeal the Kansas support orders, those orders became res judicata as to whether he was in arrears. Linda and SRS also maintain that the Kansas child support judgments never became dormant.

Whether jurisdiction exists is a question of law over which an appellate's court's scope of review is unlimited. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000). Likewise, interpretation of a statute is a question of law, and the appellate court's review is unlimited. An appellate court is

not bound by the district court's interpretation of a statute. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

### *Did the Kansas court have jurisdiction?*

Enforcement of both the original Kansas child support order, and the modified Kansas order entered in 1989, were governed by URESA until its repeal and enactment in 1994 of the Uniform Interstate Family Support Act (UIFSA), K.S.A. 23-9,101 *et seq.* Under URESA, multiple support orders from different jurisdictions could be valid at the same time. This result stemmed from URESA granting jurisdiction to a responding state to establish, vacate, or modify a support obligation which had been created in another state. *Gentzel v. Williams*, 25 Kan. App. 2d 552, 556, 965 P.2d 855 (1998). However, under URESA, the original support obligation was not nullified by an inconsistent order being entered in another state. Rather, to have that effect, the responding state's order must specifically provide it was nullifying the original order. K.S.A. 23-480 (Ensley); *Wornkey v. Wornkey*, 12 Kan. App. 2d 506, 512, 749 P.2d 1045, *rev. denied* 243 Kan. 782 (1988).

By contrast, UIFSA establishes a one-order system designed to eliminate the potential problems related to the existence of multiple support orders under URESA. UIFSA requires all states adopting the act to recognize and enforce the same obligation. *Gentzel*, 25 Kan. App. 2d at 556-57. Further, under UIFSA, a state issuing a support order maintains continuing exclusive jurisdiction over the order as long as a party resides in that state, or until both parties consent for a different state to assume jurisdiction. K.S.A. 2002 Supp. 23-9,205(a); 25 Kan. App. 2d at 557. North Carolina adopted UIFSA effective January 1996. N.C. Gen. Stat. § 52-1-100.

Here, the North Carolina court consistently found Danny was not in arrears, despite the Kansas court consistently determining otherwise. Danny contends North Carolina's findings nullified the Kansas orders, and Linda's failure to appeal any of the North Carolina orders rendered those orders final and controlling. This is incorrect.

The primary fault in Danny's logic is that it does not consider the fact that the North Carolina court never expressly nullified or vacated the Kansas judgments. Linda initiated a multitude of proceedings in Kansas to establish and enforce Danny's support obligation. In Kansas, child support installment payments become final judgments once they are due, and they may be enforced and collected as any other judgment. *Riney v. Riney*, 205 Kan. 671, Syl. ¶ 1, 473 P.2d 77 (1970). Danny did not appeal any Kansas order establishing or enforcing his child support obligation and, accordingly, the child support payments became final judgments as they accrued.

The North Carolina court's orders under URESA did not automatically nullify or vacate the Kansas orders. K.S.A. 23-480 (Ensley); N.C. Gen. Stat. § 52A-21 (1992) (repealed 1996); *Wornkey*, 12 Kan. App. 2d at 512; *Twaddell v. Anderson*, 136 N.C. App. 56, 62-63, 523 S.E.2d 710 (1999), *rev. denied* 351 N.C. 480 (2000). The Kansas orders were sent to North Carolina for enforcement purposes only. North Carolina's response to those orders was to refuse to register or act on them because the court did not believe Danny owed any arrearages. Despite Danny's assertions to the contrary, the North Carolina decisions did not nullify the original Kansas orders because that intent was never specifically stated. See *Twaddell*, 136 N.C. App. at 62-64 (applying N.C. Gen. Stat. § 52A-21 and holding North Carolina orders did not nullify prior California order as that intent was not stated). The North Carolina court's decisions represented its refusal to accept and act on the Kansas court's orders. Nevertheless, the Kansas orders remained in effect.

With the enactment and adoption of UIFSA, the North Carolina court no longer had jurisdiction to vacate the Kansas orders. The parties do not dispute Linda has lived in Kansas for the duration of this case. Further, there has not been written consent by all parties to allow another state to modify the Kansas orders and assume jurisdiction. Accordingly, Kansas maintained continuing exclusive jurisdiction over its child support orders, rendering North Carolina without jurisdiction to nullify them. See K.S.A. 2002 Supp. 23-9,205(a).

As the district court correctly found, the North Carolina decisions did not nullify the Kansas orders. Kansas had jurisdiction both to issue and enforce its support orders. Danny failed to appeal any Kansas orders. Accordingly, the Kansas court's determination that Danny was in arrears is controlling.

*Did the Kansas judgments become dormant?*

Next, Danny argues the district court erred in finding none of the Kansas judgments had become dormant and unenforceable. As with other judgments, child support judgments are subject to the dormancy statute. *Gardner v. Gardner*, 22 Kan. App. 2d 314, 315, 916 P.2d 43, *rev. denied* 260 Kan. 992 (1996). K.S.A. 2002 Supp. 60-2403(a)(1) provides in part:

"[I]f a renewal affidavit is not filed or if execution, including any garnishment proceeding, *support enforcement proceeding* or proceeding in aid of execution, is not issued, within *five years* from the date of the entry of any judgment in any court of record in this state . . . or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor." (Emphasis added.)

The statute was amended in 1992 to include "support enforcement proceedings" as a means of execution. L. 1992, ch. 103, sec. 1. In *Gardner*, this court held the laws governing dormancy are procedural in nature; hence, they may be applied retroactively. 22 Kan. App. 2d at 317.

A support enforcement proceeding is "any civil proceeding to enforce any judgment for payment of child support or maintenance." K.S.A. 2002 Supp. 60-2403(a)(3). Examples include, but are not limited to, an income withholding proceeding initiated pursuant to either the Kansas or interstate income withholding act, a contempt proceeding, and any civil proceeding under URESA. K.S.A. 2002 Supp. 60-2403(a)(3). Generally, a judgment that remains dormant for 2 years is extinguished. K.S.A. 2002 Supp. 60-2403(a)(1); K.S.A. 60-2404. Child support judgments are not extinguished, however, until they remain dormant for 2 years after

the child's emancipation. K.S.A. 2002 Supp. 60-2403(b)(1); *Gardner*, 22 Kan. App. 2d at 316.

Here, the many Kansas support enforcement proceedings operated to prevent the Kansas support judgments from becoming dormant, as some action to enforce the judgments occurred within each 5-year period since 1980 when the divorce was granted. The district court did not err in finding the Kansas support judgements did not become dormant. Accordingly, the district court's judgment for Danny to pay $54,588 in child support arrearages and interest was correct and should be enforceable in Kansas and North Carolina.

Affirmed.