Jonna BARTLETT, n/k/a Jonna
Encelewski, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
REVENUE, Child Support Enforcement
Division ex rel. Ralph V. BARTLETT,
Appellee.

No. S–11271.

Supreme Court of Alaska.

Dec. 16, 2005.

Mark D. Osterman, Osterman Law Office, P.C., Kenai, for Appellant.

D. Kevin Williams, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

This appeal arises out of a dispute over the interstate enforcement of a child support order. Arizona denied registration and enforcement of a 1993 Alaska child support order, holding that the father, Ralph Bartlett, was not properly served and hence Alaska lacked personal jurisdiction. Based on this judgment and a petition by Alaska's Child Support Enforcement Division (CSED), the Alaska superior court vacated the 1993 order, apparently giving the Arizona court's order preclusive effect. We reverse the vacation order and hold, based on the exception to the doctrine of collateral estoppel found in section 28(3) of the Restatement (Second) of Judgments, that orders in registration proceedings conducted under the Uniform Interstate Family Support Act (UIFSA) [1] should not be given preclusive effect in the issuing state when the issuing state retains jurisdiction.

## II. FACTS AND PROCEEDINGS

Alaska residents Ralph Bartlett and Jonna Bartlett (now Encelewski) divorced in 1985. Ralph was initially ordered to pay child support in the amount of $250 per month for their daughter, Jenessa Bartlett. On August 1, 1990, this amount was raised to $303.60 per month. In February 1993 CSED again reviewed Ralph's support obligation, asking him for updated income information in a letter sent to his last known address, a post office box in Kalamazoo, Michigan. CSED verified that Ralph received mail at this address in August 1992 and again in October 1992. After Ralph failed to respond, CSED sought and received a superior court order requiring him to submit an income affidavit and supporting financial documentation. The motion for the order was mailed to the Kalamazoo, Michigan address. The order, which was granted on May 28, 1993, warned Ralph that if he did not respond the court would impute an annual adjusted income of $60,000 and set his child support at $1,000 per month.

In a letter dated June 23, 1993, Ralph objected to his child support being set at $1,000 per month but did not provide the requested financial information. Ralph explained that he could not send check stubs verifying his income because he was unemployed. It was later established that Ralph was hired by the Arizona Public Service on June 21, 1993, was still living and employed in Arizona in 1996, and was making a gross yearly income of $50,112. Ralph also admitted in later pleadings that "he had been in Arizona since prior to April 23, 1993." But the return address on Ralph's envelope was Wayland, Michigan; his letter was mailed from Arizona; and Ralph stated in the letter that his "home base" was Connecticut. Ralph did not clarify in his letter which address CSED should use to contact him.

In August 1993 CSED notified the superior court of Ralph's failure to comply with its order and requested that the court modify Ralph's child support to $1,000 per month. Although CSED confirmed through the postmaster that Ralph received mail at the Wayland address in June 1993, CSED sent a copy of the notice of noncompliance to Ralph at the Kalamazoo address, rather than the Wayland address.

A month later, on September 13, 1993, Superior Court Judge Charles K. Cranston raised Ralph's support obligation to $1,000 per month based on an imputed annual in-

---

1. 9 U.L.A. 241 (2001).

come of $60,000. The order listed the Kalamazoo address for Ralph. Later that month, an assistant attorney general wrote to Ralph at the Wayland address, advising him of the modification and telling him that if he submitted income information the order could be adjusted to a lesser amount.

In August 1994 Jenessa's stepfather adopted her, ending Ralph's support obligation. But CSED continued to seek arrears that had accrued before the adoption. After learning that Ralph had moved to Arizona, CSED tried to register the child support order in that state under UIFSA. Ralph petitioned the Arizona court to dismiss the registration, arguing that he was not properly served with the 1993 modification because CSED used the Kalamazoo address.

The Arizona court agreed. At the conclusion of a December 1997 hearing, the Arizona superior court stated that it was denying the registration order because "proper service was not made on the person of Mr. Bartlett." On May 13, 1998, an Alaska wage withholding order was issued to Ralph's employer, Arizona Public Service. On July 22, 1998, the Arizona superior court quashed this withholding order and reiterated that Alaska had failed to effectuate proper service on Ralph, rendering the 1993 child support judgment void.

Based on the Arizona court's order, Alaska Superior Court Judge Harold M. Brown vacated the 1993 support order under Alaska Civil Rule 60(b)(4), which provides that a judgment may be set aside if it is void. Consequently, CSED determined that Ralph had overpaid support and was owed $7,655.70, $5,545.56 of which CSED had not yet distributed to Jonna. Jonna moved for a new trial, which the superior court denied. Jonna then sought to reinstate the 1993 order under Civil Rule 60(b), asserting that Ralph's correspondence with CSED established that Ralph had actual notice of the

1993 modification and that Ralph intentionally misled CSED about his income and ability to pay child support. Jonna also alleged that CSED failed to inform the Arizona court of "postal verifications" in its files that "showed that Ralph received mail at the addresses listed and used by CSED." The superior court found that Jonna had not proved "her fraud, misrepresentation or misconduct assertions by clear and convincing evidence," declined to reinstate the 1993 child support order, and concluded that the funds currently held by CSED should be released to Ralph. Jonna appeals.

## III. DISCUSSION

Despite the complicated procedural history of this case, this appeal only concerns child support for a period of roughly one year (September 1993 to August 1994) and is limited to the narrow legal question whether the doctrine of collateral estoppel bars review of an Arizona court's determination that the Alaska superior court did not have personal jurisdiction due to improper service.

### A. Standard of Review

█ The applicability of the doctrine of collateral estoppel is a question of law subject to our independent review.[2] On questions of law, we adopt "the rule of law most persuasive in light of precedent, reason, and policy" without deferring to the lower court's decision.[3]

### B. Arizona Properly Considered Jurisdictional Issues Prior to Registering Alaska's Child Support Order Under UIFSA.

A complex statutory scheme of federal legislation exists to promote efficiency and enforcement of interstate child support judgments. The Uniform Interstate Family Support Act (UIFSA)[4] and the Full Faith

---

2. *Campion v. State of Alaska, Dep't of Comty. & Reg'l Affairs, Hous. Assistance Div.,* 876 P.2d 1096, 1098 (Alaska 1994) (citing *Borg–Warner v. Avco Corp.,* 850 P.2d 628, 633 n. 15 (Alaska 1993)).

3. *Norcon, Inc. v. Kotowski,* 971 P.2d 158, 164 n. 3 (Alaska 1999).

4. Unif. Interstate Family Support Act § 603(c), 9 U.L.A. 255 (2001) (providing that a state asked to enforce another state's child support order "shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction"). 42 U.S.C. § 666(f) (2000) requires states to adopt UIFSA.

and Credit for Child Support Orders Act (FFCCSOA)[5] require states to enforce other states' child support judgments in order to create uniformity in interstate judgments. Both Arizona and Alaska have adopted UIF-SA.[6] UIFSA permits a defendant who has not already litigated the issue to contest the validity of the support order being registered by proving that "the issuing tribunal lacked personal jurisdiction over the contesting party."[7] "[B]efore one state court is bound by a judgment rendered in a court in another state, it may inquire into the propriety of a foreign court's exercise of jurisdiction. If the foreign court did not have jurisdiction, full faith and credit need not be given."[8] Similarly, FFCCSOA permits a party to challenge the enforcement of a child support judgment when the issuing court lacked subject matter jurisdiction, personal jurisdiction, or failed to provide the contesting parties with "reasonable notice and opportunity to be heard."[9]

In contesting CSED's attempt to register Alaska's child support order in Arizona, Ralph argued that he was improperly served with the 1993 modification order, and hence the Alaska court lacked personal jurisdiction to modify his child support obligation. Jonna contends that the Arizona court did not have jurisdiction to consider the validity of Alaska's order because Alaska retained exclusive jurisdiction to modify child support, and service was properly made on Ralph. We disagree.

■ We have routinely stated that service of process is a prerequisite to a court validly exercising personal jurisdiction over a party.[10] In *Lagerwey v. Lagerwey*, we held that "it would be improper for a court of this state to issue a judgment for arrears [on a foreign support order] without first obtaining personal jurisdiction over the obligor and affording him an opportunity to litigate the propriety of such a modification."[11] We further explained that the only exception to this rule occurs "when the foreign support order is a final judgment entitled to full faith and credit in this state and the obligor has been properly notified as to satisfy the due process clause."[12] "A judgment is void 'where the state in which the judgment was rendered had no jurisdiction to subject the parties or the subject matter to its control....' "[13] In this instance, the Alaska superior court issued a default judgment against Ralph following his failure to supply financial information. Ralph did not litigate the issue of service or notice in the Alaska superior court, nor did he appeal Alaska's modification order. "In the case of a judgment entered by

---

5. 28 U.S.C. § 1738B (2000) states in full:
   (c) *Requirements of child support orders.* A child support order made by a court of a State is made consistently with this section if—
   (1) a court that makes the order pursuant to the laws of the State in which the court is located and subsections (e), (f), and (g)—
   (A) has subject matter jurisdiction to hear the matter and enter such an order; and
   (B) has personal jurisdiction over the contestants; and
   (2) reasonable notice and opportunity to be heard is given to the contestants.

6. AS 25.25.101 et seq.; Ariz Rev. Stat. § 25–261 et seq.

7. AS 25.25.607(a)(1); *see also Wall v. Stinson*, 983 P.2d 736, 737 (Alaska 1999) (explaining final judgments are entitled to full faith and credit in sister states as long as issuing court had jurisdiction over parties and subject matter); *United States v. Bigford*, 365 F.3d 859, 871 (10th Cir. 2004).

8. *Superior Court v. Ricketts*, 153 Md.App. 281, 836 A.2d 707, 736 (2003) (quoting *Imperial Hotel, Inc. v. Bell Atlantic Tri–Con Leasing Corp.*, 91 Md.App. 266, 603 A.2d 1371, 1373–74 (1992)) (holding no res judicata where appellee never litigated in California whether California courts had jurisdiction to enter two default judgments against him; circuit court was entitled to determine whether California exercised jurisdiction properly).

9. 28 U.S.C. § 1738B (2000).

10. *See, e.g., Beam v. Adams*, 749 P.2d 366, 367 (Alaska 1988).

11. 681 P.2d 309, 312 (Alaska 1984).

12. *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)); *see also* Kurtis A. Kemper, Annotation, *Construction and Application of Uniform Interstate Family Support Act*, 90 A.L.R. 5th 1, § 45 (2005).

13. *DeNardo v. State*, 740 P.2d 453, 457 (Alaska 1987) (quoting *Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966)).

... default, none of the issues is actually litigated." [14] We therefore conclude that, given the provisions of UIFSA and FFCCSOA, it was proper for the Arizona court to consider Ralph's contention that he was improperly served. [15]

We need not address the merits of the Arizona court's determination that there was a lack of personal jurisdiction. We turn instead to the question whether the Arizona court's determination bars subsequent litigation on this issue under the doctrine of collateral estoppel.

### C. The Exception to the Doctrine of Collateral Estoppel in Section 28 of the Restatement (Second) of Judgments Applies in this Case.

This appeal raises the question whether collateral estoppel bars Jonna from challenging the Arizona court's determination that the 1993 Alaska order was invalid due to lack of service. Although the parties have raised questions regarding privity and whether Jonna had an opportunity to contest Ralph's claims before the Arizona court, we need not reach these issues because we conclude that even if the elements of collateral estoppel were shown to be satisfied in this case, an exception to that doctrine applies.

■■■ The doctrine of collateral estoppel, or issue preclusion, "renders an issue of fact or law which has already been decided by a court of competent jurisdiction conclusive in a subsequent action between the same parties, whether on the same or a different claim." [16] To this general rule, section 28 of the Restatement (Second) of Judgments sets out what can fairly be called a "limited scope, limited jurisdiction" exception:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . .

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them[.] [17]

We find that this exception applies in the case of child support registration proceedings because such proceedings do "diffe[r] in the quality [and] extensiveness of the procedures followed in the two courts" [18] and because there are "factors relating to the allocation of jurisdiction" [19] that strongly warrant granting jurisdiction to the state issuing the child support order.

■■■ Child support registration proceedings are typically perfunctory in the responding state and the responding state is limited in its authority to act. Under UIFSA and FFCCSOA, the registration of an out-of-state child support order takes place immediately upon filing, without further action on the part of the responding state. [20] An obligor may contest registration or enforcement by the responding state, but only on limited grounds. [21] If the responding state finds that a successful defense has been presented in a registration contest, § 607(b) of UIFSA specifically lists two possible responses: a stay of enforcement of the registered order in the responding state or a continuance. [22] The

---

14. *Campion,* 876 P.2d at 1099 (quoting Restatement (Second) of Judgments § 27 cmt. e (1982)).

15. Arizona explicitly found that it did not have jurisdiction to modify the child support order and hence, did not improperly impinge on Alaska's continuing exclusive jurisdiction in this matter, as Jonna asserts.

16. *McElroy v. Kennedy,* 74 P.3d 903, 907 (Alaska 2003) (citing Restatement (Second) of Judgments § 27 (1982)).

17. Restatement (Second) of Judgments § 28 ("Exceptions To The General Rule Of Issue Preclusion").

18. *Id.*

19. *Id.*

20. Unif. Interstate Family Support Act §§ 601–607, 9 U.L.A. 241 (2001).

21. *Id.*

22. Section 607(b) of UIFSA provides:

section also authorizes "other appropriate orders," but this phrase should be accorded a limited construction consistent with the legislation's proclivity toward non-interference with the original order that is evident from the remedies that are specifically provided.[23]

Crucial to this case, the responding state is expressly prohibited from modifying the child support order of the issuing state if either the child or the obligee continues to reside in the issuing state.[24] The prohibition against the modification of a child support order is broad: " 'modification' means a change in a child support order that affects the amount, scope or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." [25] If the Arizona order in this case were given issue-preclusive effect, the 1993 Alaska order would be modified within the meaning of 28 U.S.C. § 1738B(b) because the amount of the 1993 order would be affected and the order would be replaced by the earlier 1990 order requiring Ralph to pay $303 per month.

The Arizona court itself recognized that its ruling was not meant to be the last word on the validity of the 1993 Alaska order. The Arizona court in its order of July 22, 1998 (issued some months after ruling that Ralph had not been properly served) set a status hearing for a future date "to review the progress being made between the Respondent and the States of Arizona and Alaska as to jurisdiction on the $1,000 per month child support order." This statement is consistent with the Arizona court's oral ruling in which, after denying registration, the court indicated that the $1,000 per month order was still in effect in Alaska:

[Court Addressing Ralph:]

And too because of what my concerns are with you and I've voiced them here and elsewhere, nothing changes. The Alaska order of a thousand dollars per month, according to them is still in effect. You'll have to follow through with that and get that taken care of.

So my suggestion to you is that you make immediate arrangements through Mr. Nelson or through an attorney in Alaska to make an effort to overturn the current order.

It's a difficult situation. It's going to take you some more money to get that done, but I suggest you change that thousand dollar order.

The statutory scheme also allocates jurisdiction between issuing and responding courts in response to several factors common to child support order proceedings. Under the registration system previous to UIFSA, whether governed by the Uniform Reciprocal Enforcement of Support Act (URESA) [26] or its revised version [27] (RURESA), responding states were granted a broader authority to modify child support degrees.[28] To accommodate these powers of modification, URESA had a clause stating that orders entered by a responding state did not supersede a prior order in the initiating state [29] and the

---

If a party presents evidence establishing a full or partial defense under subsection (a), a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the law of this state.

**23.** This interpretation entails an application of the *ejusdem generis* principle (the general is controlled by the particular) in that when several items in a list share an attribute, it suggests that the general item possesses the same attribute. *See Alaska State Employees Ass'n v. Alaska Pub. Employees Ass'n*, 825 P.2d 451, 460 (Alaska 1991).

**24.** UIFSA §§ 610–613; 28 U.S.C. § 1738(B)(d)-(e).

**25.** 28 U.S.C. § 1738B(b).

**26.** *9C U.L.A.* 273 (2001).

**27.** *9C U.L.A.* 81 (2001).

**28.** The commentary to § 606(a) of UIFSA notes that UIFSA "is philosophically very different from RURESA which directed that a registered order 'shall be treated in the same manner as a support order issued by a court of this state.' Under UIFSA a contest of the fundamental provisions of the registered order is not permitted in the responding State."

**29.** *See* URESA § 30, *quoted in State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Valdez v. Valdez,* 941 P.2d 144, 148 (Alaska 1997).

revised version of URESA similarly provided that a support order entered in a responding state would not nullify an order in an initiating state unless specifically so provided.[30]

In *State, Department of Revenue v. Valdez*, we held "that a support order entered by a responding court pursuant to a URESA petition, which does not specifically modify an order entered in the initiating state, has no effect on the validity of that earlier order and is not entitled to full faith and credit by courts of the initiating state." We observed that this holding was consistent with the intent of URESA to assist in the enforcement of support obligation when parents move to new jurisdictions.[31] We also noted that the holding is consistent with the practicalities of interstate enforcement including the customary lack of participation by the obligee and the lack of information on the part of the responding court.[32] We recognized that

> it would be unfair to give preclusive effect to a new support order entered in a proceeding in which the obligee commonly does not participate. *See In re Marriage of Popenhager*, 160 Cal.Rptr. at 384 ("The specificity ... required for modification ... recognizes that a reciprocal case is a two-state matter with no appearance by the obligee. Thus, the responding court may frequently lack information as to the obligee's testimony or evidence as to the obligee's ability to pay.").[33]

The same policies and practical realities that underlay the reluctance to give res judicata effect to child support orders issued by responding states under URESA also apply to the current UIFSA regime. If anything, the increased restrictions on the authority of responding states to modify child support orders in UIFSA suggest that courts should be even more reluctant to give preclusive effect to orders issued by responding states. In the words of the Restatement (Second) of

Judgments, these policies and practicalities are factors that suggest that the proper allocation of jurisdiction as between two courts should rest with the issuing court.[34]

Although cases under UIFSA concerning the preclusive effect of the responding state's order on the issuing state's order are rare, the Court of Appeals of Kansas in *Summitt v. Summitt* has addressed the exact issue.[35] The court there declined to give res judicata effect to a series of orders issued by North Carolina that refused the registration and enforcement of orders of support originally issued by Kansas. The North Carolina court had repeatedly found that the obligor was not in arrears on his support duty. The last such order was governed by UIFSA. The obligor's argument, as summarized by the Kansas court, is very similar to Ralph's argument in this case:

> Linda submitted the matter to the North Carolina court, which found that he was not in arrears. According to Danny, the North Carolina decisions nullified the Kansas orders, and Linda's failure to appeal any of the North Carolina decisions rendered that court's findings res judicata as to whether he owed arrearages.

The Kansas court rejected this argument both as to the orders to which URESA applied and as to the final order governed by UIFSA. As to the UIFSA order, the court held that because under UIFSA, North Carolina lacked jurisdiction to "nullify" the Kansas orders, the Kansas trial court properly declined to give preclusive effect to the North Carolina decisions discussing whether arrearages were owed.[36]

▪ In short, the increased restrictions on the responding's state authority in the registration and enforcement of child support orders under UIFSA suggest that the proceedings on child support orders undertaken by the responding state are different in quality and extensiveness from those of the issu-

---

**30.** RURESA § 31, *quoted in Valdez*, 941 P.2d at 149.

**31.** 941 P.2d at 150.

**32.** *Id.*

**33.** *Id.*

**34.** Restatement (Second) of Judgments § 28(3).

**35.** 31 Kan.App.2d 812, 74 P.3d 584, 586–87 (2003).

**36.** *Id.* at 586.

ing state. The policies and practicalities involved in child support proceedings, which are ongoing and continuous in the original jurisdiction so long as the child or obligee still resides in that jurisdiction, also suggest that the allocation of jurisdiction as between the two states should be in favor of the issuing state. Based on the "limited scope, limited jurisdiction" exception of the Restatement (Second) of Judgments, we therefore conclude that the Arizona court's determination that Ralph was not properly served should not be given issue preclusive effect so as to invalidate the 1993 Alaska order.

## IV.  CONCLUSION

Because the "limited scope, limited jurisdiction" exception to the collateral estoppel doctrine applies, we REVERSE the order vacating the 1993 order for modification and REMAND for proceedings consistent with this opinion.