[No. D018047. Fourth Dist., Div. One. Aug. 3, 1994.]

In re the Marriage of MARIE P. ANGOCO and PRIESTLY SAN NICOLAS.
MARIE P. ANGOCO, Respondent, v.
PRIESTLY SAN NICOLAS, Appellant.

## COUNSEL

Mark Wright Rossi for Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Respondent.

## OPINION

MILLER, J.*—Priestly San Nicolas appeals an order setting his child support obligation to his minor daughter at $433 per month after his former spouse Marie P. Angoco brought an action under the Uniform Reciprocal Enforcement of Support Act (URESA).[1] San Nicolas contends (1) the provisions of URESA do not apply here, (2) the certification of this matter under URESA was the result of misstatements of fact, (3) the court erred in

---

*Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]The Uniform Reciprocal Enforcement of Support Act (URESA), adopted in California in 1953 and revised in 1968 (RURESA), was codified as Code of Civil Procedure former sections 1650-1699.4 before December 31, 1993, and is currently found in Family Code sections 4800-4854. All 50 states, the District of Columbia, Guam and the Virgin Islands have adopted either URESA or RURESA. (*Scott* v. *Superior Court* (1984) 156 Cal.App.3d 577, 586

finding a jurisdictional basis to make a child support order under URESA and (4) the prosecution of this matter by the district attorney was improper and barred by the existence of a valid child support order in another jurisdiction. We conclude none of these contentions has merit and accordingly affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

San Nicolas and Angoco were married in the Territory of Guam in 1982 and divorced there in 1991. They have one daughter, Andrina, born on December 4, 1983. As part of the judgment of divorce, the parties agreed Angoco would have legal and physical custody of Andrina, San Nicolas would have reasonable visitation rights and he would pay child support of $300 per month during the months Andrina lived with Angoco. The parties further agreed they would periodically exchange financial information so that child support could be adjusted "according to the Child Support Regulations in force in Guam."

Angoco and Andrina continue to reside in Guam. San Nicolas is a member of the United States Navy and presently resides in California.

In September 1991, Angoco filed a petition in the Guam Superior Court under URESA, seeking to establish an order for child support and medical coverage. Specifically, Angoco checked the box on the preprinted form requesting San Nicolas "pay an amount of current support for the dependent[] as required by law (guidelines) in the responding state." The court issued a certificate and order authorizing the submission of these pleadings to the California Department of Justice, Central Registry, for action based on the provisions of URESA. On April 30, 1992, the San Diego County District Attorney issued a summons and filed an order to show cause in the San Diego County Superior Court for enforcement of child support under Welfare and Institutions Code section 11475.1, as a result of the URESA action initiated by Angoco in Guam.

At the hearing on the order to show cause, the court found Angoco had the ability to earn net income of $976 per month, San Nicolas had an adjusted net income of $1,946 per month and San Nicolas's custodial share of time

---

[202 Cal.Rptr. 920]; *In re Marriage of Ryan* (1994) 22 Cal.App.4th 841, 845, fn. 1 [27 Cal.Rptr.2d 580].)

All statutory references are to the former provisions of the Code of Civil Procedure unless otherwise specified. To be consistent, we use the term URESA rather than RURESA. (See Fam. Code, § 4800.)

with Andrina was 15 percent. Based on these findings and the statutory support guidelines (see Civ. Code, former § 4720 et seq.), the court ordered San Nicolas to pay child support in the amount of $433 per month, specifically ruling "this order modifies the amount of child support previously paid by [San Nicolas]." No arrearages were sought or ordered.

San Nicolas then filed a motion for reconsideration.[2] After hearing, the court denied the motion, finding: "The laws of the State of California apply. This is not a modification of the Guam order, but the establishment of a new support order based on URESA. The Guam order still is in effect." A wage assignment issued on October 22, 1992.

## DISCUSSION

### I

San Nicolas contends the remedies of URESA are designed only for the enforcement of an unmet duty of support and thus do not apply here. He asserts his compliance with the valid child support order in Guam and the absence of any accrued arrearages preclude invoking URESA's enforcement provisions.[3] We disagree.

The purposes of URESA "are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." (§ 1652.) URESA itself "creates no duties of family support but leaves this to the legislatures of the several states. The Act is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another state. . . ." (9B West's U. Laws Ann. (1987) RURESA, prefatory note, p. 382.) Thus, the scope of the act is expressly limited to determining entitlement to support already established and enforcing such duties of support. (See *Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 659 [165 Cal.Rptr. 877, 612 P.2d 967].)

"Duty of support" is defined in URESA as a "duty of support whether imposed or imposable by law or by order, decree, or judgment of any court . . . and *includes* the duty to pay arrearages of support past due and unpaid." (§ 1653, subd. (b); italics added.) "*All* duties of support, *including* the duty to pay arrearages, are enforceable by an action under [URESA]. . . ." (§ 1672,

---

[2]Although San Nicolas was not represented by counsel at the time of the order to show cause hearing, he was represented by counsel at the hearing on his motion for reconsideration.

[3]San Nicolas further asserts Angoco's remedy is a modification motion in Guam where, he notes, the guidelines require a much lower monthly child support obligation.

italics added.) In interpreting this statutory language, we give effect to every word, clause and sentence so that no part will be inoperative or superfluous. (*AFL-CIO* v. *Deukmejian* (1989) 212 Cal.App.3d 425, 435 [260 Cal.Rptr. 479].) The words "include" and "including" in statutes are ordinarily words of enlargement and not of limitation. " 'The statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.' [Citations.]" (*Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501 [117 Cal.Rptr. 42]; see also *Smyers* v. *Workers' Comp. Appeals Bd.* (1984) 157 Cal.App.3d 36, 41 [203 Cal.Rptr. 521].) ▮▮ The Legislature's choice of the words "includes" and "including" when referring to the duty to pay arrearages necessarily means other duties of support are includable, thus encompassing situations where no arrearages exist, that is, where the obligor is not delinquent in payments.

Stated another way, San Nicolas is no less an "obligor" under the provisions of URESA simply because his support payments are current. The design of URESA legislation was such that *all* support orders, whether for sums presently due or past due and unpaid, whether final or modifiable, are to be enforced under that act. (See *Morris* v. *Cohen* (1983) 149 Cal.App.3d 507, 513 [196 Cal.Rptr. 834].) Manifestly, this includes any duty existing under statutory law where (1) support is being currently paid, (2) arrearages exist, or (3) the duty to support has never been reduced to a judgment or order and is now the basis of litigation under URESA. (*Scott* v. *Superior Court, supra*, 156 Cal.App.3d at p. 584; see also *Banks* v. *McMorris* (1975) 47 Cal.App.3d 723, 727 [121 Cal.Rptr. 185].) Thus, URESA was enacted to facilitate the enforcement of existing as well as past duties of support against persons presently legally liable for such support. (See *Moffat* v. *Moffat, supra*, 27 Cal.3d 645 at p. 659.) ▮▮ Its provisions should be liberally construed with reference to the object to be obtained and every endeavor should be made to render the act operable. (*In re Marriage of Ryall* (1984) 154 Cal.App.3d 743, 751 [201 Cal.Rptr. 504].)

In *Scott* v. *Superior Court, supra*, 156 Cal.App.3d 577, a mentally disabled adult resident of New York sued her father, a California resident, for support under California law, alleging her disability rendered her unable to work to support herself and thus she was financially "in need" under Civil Code former section 206. The law of New York did not recognize the claimed support obligation and presumably the father had never been required to pay support to his adult daughter. (156 Cal.App.3d at pp. 579-580.) The father unsuccessfully moved for summary judgment, arguing under California's "governmental interest approach" to choice of law questions, New York is the state having a true interest in applying its own law. (*Ibid.*)

On appeal, the court identified the issue as "whether choice of law principles require application of California law, which recognizes a parental obligation to support dependent adult children, or application of New York law, which negates such obligation for resident parents." (*Scott* v. *Superior Court*, *supra*, 156 Cal.App.3d at p. 579.) The court held that URESA, adopted by California and New York, requires application of the law of the state where the obligor is present (§§ 1676, 1680) and thus the father was obligated to support his adult daughter. (156 Cal.App.3d at p. 586.)[4]

■ Although the issue before us is not exclusively one of URESA's choice of law provisions as raised in *Scott*, that case illustrates the point that "all duties" of support are enforceable by an action under URESA, even where the obligor had no prior support obligation or where no arrearages exist.[5]

A straightforward reading of URESA as enacted by the California Legislature supports the conclusion its provisions are properly invoked where, as here, there is an existing, nondelinquent support order. This interpretation furthers URESA's purpose of providing a means of enforcing *all* support obligations of obligors located outside the jurisdiction where the dependent spouses and children are present. (See *Mehrstein* v. *Mehrstein* (1966) 245 Cal.App.2d 646, 648 [54 Cal.Rptr. 65].)

## II

■ San Nicolas contends the court in Guam improperly certified this matter to California under URESA based on Angoco's material misstatements of fact. He asserts as a result of these misstatements, the San Diego County Superior Court mistakenly believed it was establishing an initial order for child support.

### A.

Preliminarily, we note that any dissatisfaction with the actions or order of the court in Guam cannot be the basis for an appeal in California. Nevertheless, any deficiencies in the URESA petition, once it was before the San Diego County Superior Court, were technical and did not deprive the court of information necessary to make a correct decision.

---

[4]The fact the daughter had not elected to proceed under URESA by initiating her action in New York did not alter the court's conclusion. (*Scott* v. *Superior Court*, *supra*, 156 Cal.App.3d at p. 579.)

[5]The holding in *Scott* appears to foreclose any argument, not made here by San Nicolas, that the responding court's order under URESA, imposing a different support obligation than that imposed by the initiating court, can only be made upon a showing of a material change in circumstances.

The preprinted URESA forms submitted by Angoco indeed contain inconsistent information. In one place, the form states no current support order exists. Just below that entry, the form states the current support order, dated February 1, 1991, is for $300. Angoco's financial information shows zero received in child support, zero other income and zero monthly expenses. The support order information also shows San Nicolas's arrearages as zero. In one place, the form lists San Nicolas's monthly earnings as zero. However, the medical insurance information section shows San Nicolas is employed by the "U.S. Navy."[6] Although the forms contain insufficient information for the San Diego court to assess the present financial needs of Angoco and Andrina or San Nicolas's ability to pay, they do establish the existence of a current duty of support by a resident of San Diego, California, a reciprocating jurisdiction. (§ 1676.)

Contrary to San Nicolas's position, any errors or omissions in the URESA petition did not result in the improper certification of the action to California. If the initiating court (here, Guam) finds the complaint sets forth facts from which it may be determined the obligor owes a duty of support and that a court of the responding state (here, California) may obtain jurisdiction of the obligor or his property, the initiating court *shall* certify the complaint to the responding state. (Guam Code Civ. Proc., § 1512; see also § 1676.) The responding state, through the district attorney, then must serve a copy of the complaint and a citation or summons on the obligor. (§ 1680.) At this stage of the proceedings, the existence of a support order in another jurisdiction is irrelevant. Acknowledgment by the courts of the initiating or responding states of an existing support order is not, as San Nicolas suggests, determinative of the issue of the responding court's jurisdiction under URESA.

San Nicolas was personally served under section 1680, subdivision (b) and appeared in court. The order to show cause was for "child support" as requested in the URESA petition, not for modification of an existing order. When the court learned of the existing Guam order, the case was continued to allow the district attorney to obtain Angoco's completed and signed financial declaration. The court received this declaration, copies of Angoco's and her present husband's employer-issued wage statements, as well as a copy of San Nicolas's current wage and earnings statement from the navy. Having determined the existence of a current duty of support (see §§ 1670, 1682), the court properly continued the matter to obtain accurate financial information from the parties for the purpose of entering appropriate new orders to satisfy that obligation.

---

[6]Based on the abundance of zeros in almost every category, we presume this was a computer-generated form which defaults to zero in any space where no other figure is inserted.

## B.

San Nicolas claims once the court learned of the Guam support order, it should have suspended the proceedings to determine the validity of the order and the existence of any arrearages. If no arrearages existed, he argues, the court could not make an order for child support and it should have dismissed the California action under URESA. However, the language of URESA itself compels a different result.

As we previously discussed, San Nicolas's "duties of support" under URESA are not limited to arrearages of support past due and unpaid. Moreover, the remedies provided in URESA are in addition to and not substitutes for any other remedies available to the support obligee. (§§ 1654, 1697.) A court "shall not stay the proceeding or refuse a hearing under this title because of any pending or prior action or proceeding . . . in this or any other state. . . ." (§ 1691.) Thus, the existence of the enforceable order in Guam does not preclude the California court from proceeding in the URESA action "and providing a different amount for support." (*In re Marriage of Straeck* (1984) 156 Cal.App.3d 617, 623 [203 Cal.Rptr. 69].)

## III

San Nicolas contends the court erred in finding a jurisdictional basis to enter a support order in this case. As in his other arguments, he bases this contention on his interpretation of URESA as an enforcement statute, not a modification statute, that was designed only to enforce unpaid support obligations.

After hearing on the order to show cause, the court termed its support order a "modification" of the amount of support previously paid by San Nicolas. However, when San Nicolas moved for reconsideration, the court clarified its order was not a modification of the Guam order, but the establishment of a new support order based on URESA. The court further clarified the Guam order was still in effect. This characterization was proper under the complaint procedure of URESA used by Angoco.

A support obligee may proceed under URESA to establish a new support order.[7] Under Guam's version of URESA, "[a]ll duties of support, including arrearages, are enforceable by complaint. . . ." (Guam Code Civ. Proc., § 1508.) Similarly, in California, "[a]ll duties of support, including the duty to pay arrearages, are enforceable by an action under [URESA], including a

---

[7]A support obligee may alternatively proceed by registering an existing support order and having it enforced in California. (§ 1698.)

proceeding for civil contempt." (§ 1672.) When this procedure is used, the resulting support order "does not nullify and is not nullified by a support order made by a . . . court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." (§ 1689.)

Once the determination has been made that the obligor has a duty of support, the court may enter a new order based on the present circumstances of the parties to satisfy that duty. Because an order of support under the complaint procedure of URESA is not intended to enforce obligations arising under the terms of prior foreign support orders, the amounts previously ordered have no relevance in this proceeding. (See *Henry v. Knight* (Colo.App.1987) 746 P.2d 1375, 1378.) Thus, in making a new support order, the court in the responding state may set support at a different (i.e., greater) amount than that specified by the judgment in the initiating state.[8] (See *State of Iowa* ex rel. *Petersen v. Miner* (1987) 226 Neb. 551 [412 N.W.2d 832, 833].) Under these circumstances, an order for support greater or less than that ordered by a prior dissolution decree is not a modification.

Under section 1655, "[d]uties of support arising under the law of this State, when applicable under Section 1670, bind the obligor, present in this State, regardless of the presence or residence of the obligee." Section 1670 provides that "[d]uties of support applicable under this title are those imposed under the laws of any state where the obligor was present for the period during which support is sought. . . ."[9] Thus, any duty owed by San Nicolas as the support obligor must be determined under California law. (See *Moffat v. Moffat, supra,* 27 Cal.3d at p. 653.) Here, the court properly exercised its jurisdiction under URESA in applying California law to determine the current amount of San Nicolas's child support obligation. (See *In re Marriage of Ryan, supra,* 22 Cal.App.4th 841, 849.)

---

[8]The court in *Scott* v. *Superior Court, supra,* 156 Cal.App.3d at page 587, implicitly recognized the responding state could impose a support obligation greater than that imposed in the initial support order when it held the constitutional guarantee of freedom of interstate travel and migration is not violated merely because one state's laws impose support obligations greater in scope or extent than the laws of another state.

[9]San Nicolas argues that, theoretically, a support obligee could use URESA to obtain multiple support orders from numerous jurisdictions every time the support obligor moved to a different state. However, to the extent support orders from different jurisdictions overlap or conflict, the obligor receives credit for amounts paid on a co-existing order in another jurisdiction. (§ 1689.) Significantly here, Angoco did not select California as the jurisdiction in which she could file her complaint. Rather, California became the responding state in the URESA proceeding by virtue of San Nicolas's residence here.

## IV

■ Citing *County of Los Angeles* v. *Ferguson* (1979) 94 Cal.App.3d 549 [156 Cal.Rptr. 565], San Nicolas contends the prosecution of this matter by the district attorney under Welfare and Institutions Code section 11475.1 was barred by the existence of the Guam child support order. He asserts Angoco's only remedy was an action in Guam to modify the order contained in the marital settlement agreement.

Under Welfare and Institutions Code section 11475.1, subdivision (a), the district attorney is responsible for promptly and effectively establishing, modifying and enforcing child support obligations. "Enforcing obligations" includes "the obtaining by the district attorney of an initial order for child support, . . . by civil or criminal process." (Welf. & Inst. Code, § 11475.1, subd. (f)(2).) This section, coupled with URESA's provision requiring the district attorney to prosecute the support action, based on the complaint filed by the initiating jurisdiction and forwarded to the jurisdiction where the obligor resides (§ 1680), allowed the district attorney here to seek a new support order from San Nicolas on behalf of Angoco.

San Nicolas's reliance on *County of Los Angeles* v. *Ferguson, supra,* 94 Cal.App.3d 549, is misplaced. In that case, an action was filed on behalf of a minor under Welfare and Institutions Code sections 11350.1 and 11475.1 seeking a reasonable amount of child support from the minor's father. The trial court granted judgment on the pleadings based on several deficiencies in the form complaint, including the fact the father was in default of a valid child support order in another county. (94 Cal.App.3d at pp. 552-553.) On appeal, the court affirmed, concluding where a valid child support order exists in a Family Law Act proceeding in another county in California, the district attorney must proceed by order to show cause in that county. (*Id.* at pp. 558, 560.)[10]

Here, in contrast, the proceeding was brought under URESA, not the Family Law Act. There is no California proceeding in which the district attorney could intervene in another county. As we previously stated, the URESA action here expressly allowed the district attorney to proceed by order to show cause in San Diego County where San Nicolas is present. (§ 1680, subd. (b).)

---

[10]The *Ferguson* case has been distinguished and criticized in later cases. (See, e.g., *County of Santa Clara* v. *Farnese* (1985) 183 Cal.App.3d 257, 264 [237 Cal.Rptr. 457]; *County of El Dorado* v. *Spence* (1986) 182 Cal.App.3d 698, 706 [227 Cal.Rptr. 365].)

## DISPOSITION

The order is affirmed.

Kremer, P. J., and Benke, J., concurred.