[No. G038172. Fourth Dist., Div. Three. Feb. 28, 2008.]

In re the Marriage of LOUISE E. and CHARLES RANDALL GERKIN.
LOUISE E. GERKIN, Respondent, v.
CHARLES RANDALL GERKIN, Respondent;
COUNTY OF ORANGE, Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Paul Reynaga and Mary Dahlberg, Deputy Attorneys General, for Appellant.

Louise Gerkin, in pro. per., for Respondent Louise E. Gerkin.

Charles Randall Gerkin, in pro. per.; and R. Jeffrey Isles for Respondent Charles Randall Gerkin.

**OPINION**

**FYBEL, J.—**

### INTRODUCTION

The Orange County Department of Child Support Services (DCSS) appeals from an order of the Orange County Superior Court, which found a child support provision in a California judgment of dissolution had been nullified by an order of the Sedgwick County District Court in Kansas. We reverse.

Under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) (9C West's U. Laws Ann. (2001) RURESA, § 1 et seq.; Code Civ. Proc., former § 1650 et seq.), DCSS filed a petition in the Kansas court to obtain a support order enforceable against Charles Randall Gerkin in the State of Kansas. The order issued by the Kansas court set a lower amount of support than had been provided for in Charles and Louise E. Gerkin's dissolution judgment entered in California.[1] Because the Kansas court's order did not specifically state it was modifying or nullifying the existing support provision in the California dissolution judgment, under RURESA, it could not set a lower amount of support than as provided in the earlier California judgment. (9C West's U. Laws Ann., *supra*, RURESA, § 31; Code Civ. Proc., former § 1689.) Although Charles apparently made payments pursuant to the Kansas court's support order, his support obligation in California continued, subject to offset for the amounts paid in Kansas.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A judgment dissolving Louise and Charles's marriage was entered by the Orange County Superior Court in December 1988. Louise and Charles had three daughters, then ages 10, seven, and four. The judgment of dissolution established child support payments from Charles to Louise in the total amount of $484 per month. (Charles was ordered to pay $161 per month for each child; the support payments "shall continue until the child reaches the age of nineteen, or eighteen and is not a full-time high school student residing with a parent, or until the child marries, dies, is emancipated, or until further order of the court, whichever occurs first.") In late 1989, Charles moved to Wichita, Kansas.

In September 1990, DCSS sent to the State of Kansas a uniform support petition and general testimony, pursuant to RURESA, to enforce Charles's child support obligations, including accrued arrearages. In the uniform support petition, DCSS requested an order for "fair & reasonable" child support, medical coverage, plus arrearages in the amount of $3,227.50. On November 13, 1991, the District Court of Sedgwick County, Kansas, entered a support order in the total amount of $251 per month, and established arrearages at $1,811. The November order was later modified by the Kansas court to change the amount of the arrearages to $3,311.

---

[1] We will hereafter refer to Charles and Louise Gerkin by their first names to avoid confusion and for ease of reference; we intend no disrespect. (*In re Marriage of Witherspoon* (2007) 155 Cal.App.4th 963, 967, fn. 2 [66 Cal.Rptr.3d 586].)

The Kansas court trustee, which is Kansas's child support enforcement agency, reduced the amount of child support owed by Charles in July 1996 and again in July 2000, when Charles and Louise's two eldest children turned 18 years old.

In July 2004, Charles filed a motion in Kansas to determine arrearages and stay the issuance of an income withholding order, claiming he had overpaid child support by $7,430.49. DCSS's records at the time reflected arrearages in the amount of $33,908.49. On August 9, the Kansas district court ordered income withholding to cease. A hearing was conducted on January 3, 2005, on Charles's motion to determine arrearages. Louise never received notice of the hearing; neither Louise nor DCSS appeared. The Kansas court trustee and Charles's counsel advised the court they had agreed with each other that Kansas had overcollected $7,430.49. The Kansas court then entered an order against Louise and in favor of Charles in the amount of $7,430.49.

In May 2006, Charles filed an order to show cause in the Orange County Superior Court to determine arrears or overpayment and reimbursement. Charles demanded reimbursement of the $7,430.49 provided by the January 2005 Kansas court order, as well as reimbursement of any sums collected by DCSS since that order was entered.

Following a hearing, the trial court provided a detailed statement of decision. In relevant part, the statement of decision reads as follows:

". . . Within page 3 of the URESA [Uniform Reciprocal Enforcement of Support Act] petition signed by petitioner, *petitioner did not ask the Kansas Court to register and enforce the current (California) support order*, a choice at hand. Instead, the petitioner specifically petitioned the Kansas court to *set support* according to its discretion and in a 'fair and reasonable way' notwithstanding that California had already ordered respondent to pay a sum certain for child support. This record leads to one conclusion—that petitioner/DCSS asked the Kansas court to *establish* a new support order, in lieu of the California judgment. The Kansas court also ordered an 'abatement' of the support amount up to one half, for periods of time the [noncustodial parent]/respondent had extended visitation with the children—a term the California judgment did not address. The latter order is, on its face, a new and different order. On this record, it is very difficult to characterize the Kansas order as a mere successive/cumulative order while considering the California extant. [¶] . . . [¶]

". . . This court concludes the Kansas support orders were not just second in time. Instead, petitioner engaged the Kansas court to establish a new child support order, or in other words, to in fact modify the California judgment

(juxtapose to enforcement). . . . The California child support order within the California judgment was nullified when Kansas established a new support order at the request of petitioner and DCSS—arrears can not follow from a non-extant California order.

"Findings: The court makes the following findings:

"1. While the petitioner and the minor children always resided in California, nonetheless petitioner signed the URESA petition and thereby consented to Kansas jurisdiction to modify the California judgment regarding child support.

"2. The Kansas order dated November 13, 1991 nullified and superseded the California Judgment insofar as child support.

"3. The petitioner was fully aware of the issues before the Kansas court and acted by and through DCSS who filed the URESA petition, notwithstanding she was not present during the Kansas hearings. The court finds no due process violation.

"4. After the Kansas court specifically modified the California judgment, that part of the California judgment pertaining to child support was no longer enforceable.

"5. Because Kansas modified the California judgment with regard to support, Kansas acquired continuing exclusive jurisdiction so that Kansas law applied prospectively as to the accrual of interest.

"6. The state of Kansas has already determined arrears and its order is controlling and entitled to full faith and credit.

"Order:

"The court orders DCSS to enforce the Kansas order, which is controlling."

DCSS timely appealed from the court's ruling.

DISCUSSION

I.

Standard of Review

We review the trial court's interpretation of law de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823 [60 Cal.Rptr.3d 175].)

## II.

### HISTORICAL BACKGROUND

In 1950, the National Conference of Commissioners on Uniform State Laws (the Conference) and the American Bar Association (ABA) approved the Uniform Reciprocal Enforcement of Support Act (URESA); URESA was amended in 1952 and 1958. (9C West's U. Laws Ann., *supra*, URESA, Historical Notes, p. 273.) The purpose of URESA was to address "the problem of interstate enforcement of duties of support," given "the increasing mobility of the American population." (*Id.,* Prefatory Note (1950), p. 273.)

■ As relevant to the present case, URESA provided a uniform system by which a support order entered in one state could be enforced in another when the parent paying support moved. "In the past, the greatest difficulty in enforcing support where the parties are in different states has been the expense of travel to a distant state to litigate the rights of the destitute obligee. Under this Act this expense can be reduced to filing fees plus a few postage stamps. In a nutshell, this two-state proceeding is as follows: It opens with an action . . . which normally will be commenced in the state where the family has been deserted (the initiating state). A very simplified petition is filed . . . . The judge looks it over to decide whether the facts show the existence of a duty of support and if they do he sends the petition and a copy of this Act to a court of the responding state to which the husband[2] has fled or in which he has property . . . . That court will take the steps necessary to obtain jurisdiction of the husband or his property, will hold a hearing . . . and if the court finds that a duty of support exists, it may order the defendant to furnish support . . . and will transmit a copy of its order to the court in the initiating state . . . . To enforce compliance with its orders the court may subject the defendant to such terms and conditions as it may deem proper, may require him to furnish bond or make periodic payments or, in case of refusal, may punish him for contempt . . . . It has the duty to transmit to the initiating court any payments it receives and upon request to furnish a certified statement of those payments . . . . The initiating court must receive and disburse these payments . . . ." (9C West's U. Laws Ann., *supra*, URESA, Prefatory Note (1950), p. 275.) Section 30 of URESA provided: "No order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both." (*Id.*, § 30, p. 305.)

---

[2] The actual language of URESA applies to "any person owing a duty of support" and "any person to whom a duty of support is owed," without differentiation as to their respective marital roles, despite the rather dated language of the Prefatory Note. (9C West's U. Laws Ann., *supra*, URESA, § 2, subds. (g), (h), pp. 290–291.)

URESA was entirely revised in 1968, and again approved by the Conference and the ABA; accordingly, URESA was replaced by RURESA. (9C West's U. Laws Ann., *supra,* RURESA, Historical Notes, p. 81.) The purpose of the 1968 amendments was to "plug loop holes and cure defects in the enforcement procedure." (*Id.,* Prefatory Note, p. 82.) When the Kansas support order was entered in November 1991, both Kansas and California had adopted RURESA. (See Code Civ. Proc., former § 1650 et seq.; Kan. Stat. Ann., former § 23-451 et seq.)

Section 31 of RURESA provided: "A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State." (9C West's U. Laws Ann., *supra,* RURESA, § 31, p. 250.) This language was adopted virtually verbatim by both California and Kansas. (Code Civ. Proc., former § 1689; Kan. Stat. Ann., former § 23-480.)

■ The Conference sought to modify RURESA yet again in the late 1980's. Ultimately, rather than amend RURESA, the Conference drafted and approved the Uniform Interstate Family Support Act (UIFSA). Kansas repealed RURESA and enacted UIFSA in 1994. (*Summitt v. Summitt* (2003) 31 Kan.App.2d 812, 816 [74 P.3d 584].) Effective January 1, 1998, California adopted UIFSA and repealed RURESA. (Stats. 1997, ch. 194, §§ 1, 2.) UIFSA creates a new concept of continuing exclusive jurisdiction, by which the first state to issue a valid child support order retains jurisdiction over the terms of the order, and retains the sole authority to modify the order (except under certain very specific circumstances). (See Fam. Code, § 4909.) The child support order can be registered in another state for purposes of enforcement, but it never becomes an order of the registering state. (*Id.,* § 4950.)

III.

RELEVENT CASE LAW

In *In re Marriage of Ward* (1994) 29 Cal.App.4th 1452, 1455 [35 Cal.Rptr.2d 32], the father was ordered to pay the mother $200 per month for support of the couple's child as part of the dissolution judgment. The father's support obligation was later decreased to $150 per month. (*Ibid.*) A petition

under RURESA was filed in Colorado, where the father had moved, seeking to enforce the support order against the father there. (29 Cal.App.4th at p. 1455.) The mother was not present at a hearing in Colorado, but was represented by the county attorney. (*Ibid.*) The father was present and represented by counsel. (*Ibid.*) The Colorado court's order stated the parties had stipulated that the father would pay $75 per month child support and $25 per month toward arrearages. (*Ibid.*) The order did not state it was modifying the California judgment. (*Ibid.*)

The mother later petitioned to collect unpaid child support; the father argued the Colorado order modified and superseded the original support order. (*In re Marriage of Ward, supra*, 29 Cal.App.4th at p. 1455.) The California appellate court concluded the Colorado order did not modify the father's support obligations under the California dissolution judgment, therefore entitling the mother to pursue collection of the unpaid arrearages: "[T]he order of the Colorado court did not mention modification but merely ordered respondent to pay the amount he was apparently able to pay at the time." (*Id.* at pp. 1456–1457.) The *Ward* court made clear that under RURESA, a later support order, regardless of the amount of support, does not modify the original support order unless it specifies that it does so.

In *In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 518 [160 Cal.Rptr. 379], an action to dissolve a marriage was commenced in the Santa Clara County Superior Court. The judgment of dissolution ordered the father to pay $200 per month for child support. (*Ibid.*) In the meantime, the mother had moved to Washington State, where she filed an action for reciprocal support under URESA, seeking $200 per month in support payments, plus $1,200 in arrearages and costs. (*Id.* at pp. 518–519.) The Washington court authorized the mother to obtain enforcement of the support order against the father through a second, independent reciprocal action in Santa Clara County Superior Court (the reciprocal action). (*Id.* at p. 519.) At a hearing in the reciprocal action, the court concluded the father was able to pay $30 per month in child support, and ordered him to do so immediately. (*Ibid.*)

Over the course of the next eight years, the father paid $30 per month for a total of 39 months. (*In re Marriage of Popenhager, supra*, 99 Cal.App.3d at p. 519.) The father never paid $200 per month in child support, and paid nothing at all most of the time. (*Ibid.*) The mother eventually obtained a writ of execution against the father based on the child support order in the original dissolution judgment. (*Ibid.*) The father moved to quash the writ, consolidate the dissolution action and the reciprocal action, and modify the support provision in the dissolution judgment to conform to the later $30 per month support order in the reciprocal action. (*Ibid.*) After consolidating the actions, the trial court concluded the reciprocal action support order superseded the

support provisions in the dissolution judgment, and computed arrearages based on the reciprocal action support order amount of $30 per month. (*Id.* at pp. 519–520.)

The appellate court concluded the trial court had erred, because the reciprocal action support order could not supersede the support order in the dissolution judgment, meaning the father's support obligation had continued to accrue at the rate of $200 per month, offset by the amounts he had paid. "[A] reciprocal support order, in and of itself, will not act to supersede a prior support order arising from a dissolution action. Supersession occurs only where the issue of modification has been raised and litigated by the parties. Likewise, a reciprocal support order, like the instant one, which differs in face amount from a prior dissolution action support order but does not expressly mention modification, cannot automatically and after-the-fact, modify the dissolution order; the amount on the face of the reciprocal order merely represents the sum currently enforceable." (*In re Marriage of Popenhager, supra*, 99 Cal.App.3d at p. 521.)

The case analyzed the version of Code of Civil Procedure former section 1689 that was based on the 1950 version of URESA. The court, however, noted its conclusion would be the same if it applied the newer version of Code of Civil Procedure section 1689, which was based on RURESA: "[A] reciprocal support order, in and of itself, still does not supersede a prior support order. However, a reciprocal order can supersede and effectively modify a prior support order if the responding court specifically so provides in its order [citation]." (*In re Marriage of Popenhager, supra*, 99 Cal.App.3d at p. 523.)

In *Wornkey v. Wornkey* (1988) 12 Kan.App.2d 506 [749 P.2d 1045], the Kansas Court of Appeals considered the effect of former section 23-480 of the Kansas Statutes Annotated, the equivalent of 9C West's Uniform Laws Annotated, *supra*, RURESA, section 31, page 250, and Code of Civil Procedure former section 1689. The Wornkeys were divorced by the Pawnee County District Court on June 5, 1972. (*Wornkey v. Wornkey, supra*, 12 Kan.App.2d at p. 507 [749 P.2d at p. 1047].) The father was ordered to pay child support in the amount of $125 per month or the full amount of his military dependency allotment, whichever was greater. (*Ibid.*) The mother initiated an intrastate RURESA proceeding, and the Pawnee County court sent a petition and court certification to the district court in Geary County, where the father was then stationed. (12 Kan.App.2d at p. 507 [749 P.2d at p. 1047].) Rather than the $125 per month specified in the original child support order, the mother requested "a 'fair and reasonable' amount of support." (*Id.* at p. 509 [749 P.2d at p. 1048].) At a hearing on the mother's

petition, the father orally moved for a reduction in child support. (*Id.* at p. 508 [749 P.2d at p. 1048].) The Geary County District Court ordered the father to pay $75 per month. (*Ibid.*)

The mother later moved for a declaratory judgment in the Pawnee County action, asking the court to determine that the Geary County court's RURESA order did not nullify the original support order, and that she be awarded arrearages for the difference between the amount the father had originally been ordered to pay and the lesser amount of the RURESA support order. (*Wornkey v. Wornkey, supra,* 12 Kan.App.2d at p. 508 [749 P.2d at p. 1048].) The Pawnee County District Court granted the mother the relief she requested, and the father appealed. (*Ibid.*)

The Court of Appeals affirmed. "[T]he responding court (here, the Geary County District Court) may make its own determination as to the proper amount of support and enter an order awarding the obligee an award less than, greater than, or equal to a prior support order. [Citations.] Consequently, we hold that the Geary County District Court had jurisdiction to issue a URESA support order, even though the Pawnee County District Court had initially ordered support . . . . [¶] . . . [¶] The question remains whether the Geary County order modified or nullified the Pawnee County order. . . . [¶] . . . [¶] Under the express provisions of [Kansas Statutes Annotated] 23-480, the URESA order does not nullify the previous support order unless the URESA order specifically so provides. [Citations.] [¶] The Geary County District Court's URESA order did not nullify the Pawnee County District Court's support order. Indeed, the Geary County order does not mention the Pawnee County order. Because the Geary County order did not specifically provide that it was nullifying the Pawnee County order, the Pawnee County order remained enforceable and valid. The trial court did not err in concluding that the Geary County order did not modify the Pawnee County order." (*Wornkey v. Wornkey, supra,* 12 Kan.App.2d at pp. 511–512 [749 P.2d at p. 1050].)

In *In re Marriage of Angoco & San Nicolas* (1994) 27 Cal.App.4th 1527, 1532 [33 Cal.Rptr.2d 305], the husband and wife were divorced in Guam; their divorce judgment required the father to pay $300 per month in child support. The mother filed a petition under RURESA, seeking enforcement of the child support order in California, where the father was stationed. (27 Cal.App.4th at p. 1532.) The mother had checked a box on a printed form asking the California court to order the father to " 'pay an amount of current support for the dependent[] as required by law (guidelines) in the responding state.' " (*Ibid.*) (This option was not available on the uniform support petition submitted by DCSS to the Kansas district court in the present case.) The San Diego County Superior Court, based on the California support guidelines,

ordered the father to pay $433 per month in child support. (*Id.* at pp. 1532–1533.) The father argued on appeal that RURESA can only be used to enforce unpaid support obligations, and that because he was current in his payments due under the Guam support order, the California court lacked jurisdiction to enter a support order. (*Id.* at p. 1537.)

The California appellate court disagreed: "Once the determination has been made that the obligor has a duty of support, the court may enter a new order based on the present circumstances of the parties to satisfy that duty. Because an order of support under the complaint procedure of URESA is not intended to enforce obligations arising under the terms of prior foreign support orders, the amounts previously ordered have no relevance in this proceeding. [Citation.] Thus, in making a new support order, the court in the responding state may set support at a different (i.e., greater) amount than that specified by the judgment in the initiating state. [Citation.] Under these circumstances, an order for support greater or less than that ordered by a prior dissolution decree is not a modification." (*In re Marriage of Angoco & San Nicolas, supra*, 27 Cal.App.4th at p. 1538, fn. omitted.)

Other jurisdictions analyzing section 31 of 9C West's Uniform Laws Annotated, *supra*, RURESA have reached the same conclusion—a new order issued by the state in which the obligor parent is residing, and which provides a different amount of support from that set in the initiating state's original support order, does not modify or nullify the original support order unless it specifically states that it does. (*Dike v. Dike* (1994) 245 Neb. 231, 234–235 [512 N.W.2d 363] [order issued under RURESA that set support at a different amount from that set in the original support order "did not nullify, modify, or supersede the original support decree, but instead provided an additional, supplementary, or cumulative remedy"]; *White-Nathan v. Nathan* (Ct.App. 1994) 181 Ariz. 112, 115–117 [888 P.2d 237] [facts identical to those in this case, with Arizona as the initiating state and California as the responding state; entry of order in California did not lower the amount of support due under the Arizona order, which amount continued to accrue but would be offset by amounts paid to fulfill the California order]; *Bowden v. Dept. of Social Services* (Mo.Ct.App. 1995) 903 S.W.2d 577, 580 ["URESA actions are separate proceedings from motions to modify dissolution decrees. Support orders entered in URESA proceedings do not modify the amounts of child support ordered paid in dissolution decrees."]; *State, Dept. of Revenue v. Valdez* (Alaska 1997) 941 P.2d 144, 150 ["We hold that a support order entered by a responding court pursuant to a URESA petition, which does not specifically modify an order entered in the initiating state, has no effect on the validity of that earlier order and is not entitled to full faith and credit by courts of the initiating state."]; *Salins v. Gulick* (1984) 100 Nev. 125, 128–129 [676 P.2d 801] [support order obtained through use of URESA could not modify parent's obligations under divorce decree because it "does not

specifically provide for a modification of the parties' divorce decree, nor does it evidence an intention . . . to modify or supersede the support provisions of the divorce decree."]; *N.C. Dep't of Health & Human Servs. ex rel. Jones v. Jones* (2005) 175 N.C.App. 158, 162 [623 S.E.2d 272] [judgment dissolving marriage in Florida and ordering father to pay child support was not nullified by North Carolina order issued under RURESA that father was not obligated to pay any amount of child support given North Carolina's child support guidelines].)

■ "Under URESA and RURESA, new support orders in a sister state were deemed to be a cumulative remedy, *not* a modification of the original order. But these statutes also provided for modification of a court order from a sister state, if the modification was litigated and noted explicitly on the new order. [Citations.] An obligor could thus gain protection against multiple orders by securing a statement of express modification in the new order." (*Lundahl v. Telford* (2004) 116 Cal.App.4th 305, 317 [9 Cal.Rptr.3d 902] [case applying UIFSA, and comparing its procedures to those under RURESA].)

IV.

ANAYSIS

In this case, the Orange County Superior Court found the Sedgwick County District Court's November 1991 order "nullified and superseded the California Judgment insofar as child support." We conclude the trial court erred as a matter of law.

The November 1991 Kansas court order did not refer to, much less modify or nullify, the child support provisions of the California dissolution judgment.[3]

---

[3] The order, entitled "Journal Entry of Judgment," reads in full as follows: "NOW, on this 13th day of November, 1991, the same being one of the regular judicial days of the above entitled court, the above matter comes regularly on for hearing on petitioner's petition for support filed herein under the Uniform Reciprocal Enforcement of Support Act. The petitioner appears by Megan L. Campbell—Deputy Court Trustee. The respondent appears pro se. [¶] The Court, after being fully advised in the premises, finds that the petitioner's petition for support should be allowed and that the respondent should pay for the support of his dependent(s), as named in the petition filed herein. [¶] IT IS THEREFORE, BY THE COURT ORDERED, ADJUDGED AND DECREED that the petitioner's petition for support be, and is hereby allowed, and that the respondent pay to the Court Trustee, c/o Clerk of the District Court of Sedgwick County, Kansas, the sum of 251.00 per month, support is being back dated to August, 1991, as the Court previously heard arguments on this case on July 17, 1991, and reserved the right to back date support[,] the first payment to be made August 1, 1991, and a like payment to be made each month thereafter until further order of the Court. [¶] IT IS FURTHER ORDERED that support payments herein shall be made payable to the Court Trustee, c/o Clerk of the District Court, Support Division, 7th Floor, 525 North Main, Wichita,

In the uniform support petition, DCSS checked the box to indicate it was asking the Kansas district court for an order of "fair & reasonable" child support, rather than the box to indicate it was seeking "[r]egistration and enforcement of the current support order." The trial court here relied on which box was checked in reaching its decision. However, under both URESA and RURESA, a petitioning party could request, and the responding state could enter, a child support order in an amount different from that in the initiating state's order, without causing a modification or nullification of the initiating state's order. (*Wornkey v. Wornkey, supra,* 12 Kan.App.2d at pp. 511–512 [749 P.2d at p. 1050].) First, the petitioner's act of checking one box rather than another on a printed form does not meet the requirement of specification by the responding court of its intention to modify the initiating state's support order.[4] Second, the cases and the statutes are clear that in order to modify or nullify an existing support order, the responding state's order must state specifically that it is doing so. (Code Civ. Proc., former § 1689; Kan. Stat. Ann., former § 23-480; *In re Marriage of Popenhager, supra,* 99 Cal.App.3d at p. 523; *Wornkey v. Wornkey, supra,* 12 Kan.App.2d at p. 512 [749 P.2d at p. 1050].) The Kansas court's order manifestly does not do so.

Charles argues on appeal that the order of the responding court must affirmatively state it does not modify the initiating court's order: "Anything short of specific language in a clear and conspicuous man[ne]r contained in the new order explaining that the new order DOES NOT supersede the prior order and that any difference will still be owed would be a due process

---

Kansas 67203. Pursuant to K.S.A. 23-497 and an administrative order of this Court dated July 17, 1985, the Court Trustee of the Eighteenth Judicial District of Kansas is authorized to retain 5% of the support collected herein to defray the expenses of operation of his office. [¶] IT IS FURTHER ORDERED that the Clerk of the District Court, Support Division, shall disburse said payments, when received, to: payable to: County of Orange, mail to: D.A. Family Support Div., P.O. Box 448, Santa Ana, CA 92702 (24-78-70/02-I-Charles Gerkin)[.] [¶] IT IS FURTHER ORDERED that pursuant to K.S.A. 1990 Supp. 23-4, 107(b), the Court Trustee issue an Income Withholding Order to provide for payment of support herein. [¶] IT IS FURTHER ORDERED that the Hearing Officer finds that the respondent shall be given full credit for the payment of $6,000.00 which consisted of monies taken from his Knotts Berry Farm Profit-Sharing Retirement Plan even though the petitioner was required to $2,304.00 [*sic*] of it as taxes. The Hearing Officer therefore finds that the past due support owed by the respondent under the California Support Order from March 1, 1990, through July 15, 1991, is $1,811.00. The petitioner is granted a judgment against the respondent for $1811. [¶] IT IS FURTHER ORDERED that current child support will abate by one-half during any visitation period of two consecutive weeks or more. The respondent shall be required to notify the Court Trustee in writing when such visitation occurs so that it can be verified and proper credit [illegible word]. [¶] IT IS SO ORDERED."

[4] It is unclear from the appellate record what entity created the printed uniform support petition form that DCSS filled in and submitted to Kansas in 1990.

violation." This argument runs directly counter to the clear and unambiguous language of 9C West's Uniform Laws Annotated, *supra*, RURESA section 31.

 We therefore conclude the trial court erred in finding the Kansas court's November 1991 order nullified and superseded the California judgment's child support provisions. The Kansas court's order was entered pursuant to RURESA. Under 9C West's Uniform Laws Annotated, *supra*, RURESA section 31, the Kansas court's order could only nullify, supersede, or modify the California judgment's child support provisions if it specifically stated it was doing so (Code Civ. Proc., former § 1689; Kan. Stat. Ann., former § 23-480); the Kansas court's order does not. The Kansas court's order provided an additional, supplementary, or cumulative remedy for the collection of child support payments from a resident of the State of Kansas. The Kansas court's order did not lower the amount of support due under the California judgment of dissolution. The child support due pursuant to the California judgment continued to accrue until Charles and Louise's youngest daughter reached her majority,[5] but must be offset by all amounts paid by Charles in Kansas.

The Orange County trial court also made a finding that because the Kansas court's order modified the California judgment with regard to child support, Kansas acquired continuing exclusive jurisdiction over issues of child support, making its law applicable to matters such as accrual of interest. As explained, *ante*, the Kansas court's order did not modify or nullify the child support provisions of the California judgment. Therefore, this finding, too, is erroneous.

Finally, the Orange County trial court made a finding that the Kansas court's determination of arrearages "is controlling and entitled to full faith and credit."[6] This finding is also in error. Although the trial court found Louise signed the uniform support petition that initiated the support proceeding in Kansas, the record shows the petition and general testimony were actually signed by a family support officer who was presumably a DCSS employee; no contrary evidence was offered. Louise was neither represented

---

[5] It appears that the youngest child is now 23 years old, and Charles's legal obligation to provide support for all three children has ended.

[6] The Orange County trial court's order does not specify which of the two Kansas court's orders regarding arrearages it was intended to address. The November 1991 order, as later modified, set arrearages at $3,311 only for the period of March 1, 1990, to July 15, 1991, and only for unpaid support accruing under the California judgment. Then in January 2005, on Charles's motion for a determination of child support arrearages, the Kansas court concluded Charles did not owe any arrearages; to the contrary, it found Charles had overpaid child support, and was entitled to recover $7,430.49 from Louise. Given the context, we presume the Orange County court was referring to the January 2005 order.

in the Kansas court, nor within its jurisdiction, so the order providing that she owes $7,430.49 to Charles violates her due process rights. The January 2005 order reads in relevant part, "Kathleen Hale with the Court Trustees' Office appears on behalf of the State of Kansas and Petitioner [Louise]. . . . [¶] . . . [C]ounsel are in agreement that state of Kansas has over collected $7,430.49 in this case. Part of this is as result of the state of California continuing to attach any tax refund in addition to the collection efforts made by Kansas.[7] [¶] WHEREUPON the Court grants Respondent [Charles] against the Petitioner in the sum of $7,430.49."

Under Kansas law, the Kansas court trustee did not represent Louise, and had no statutory authority to bind Louise to pay any sum to Charles. (Kan. Stat. Ann., § 39-756, subd. (e) ["In any action . . . brought by a governmental agency or contractor . . . to establish or enforce a support obligation, the social and rehabilitation services' attorney or the attorneys with whom such agency contracts to provide such services shall represent the state department of social and rehabilitation services. . . . Any representation by such attorney shall not be construed to create an attorney-client relationship between the attorney and any party, other than the state department of social and rehabilitation services."].)

■ Under similar facts, the appellate court in *In re Marriage of Ward, supra,* 29 Cal.App.4th at pages 1457–1458 determined that in a proceeding under RURESA to obtain a support order in Colorado, the mother was not represented by the district attorney of the California county that filed the RURESA petition in Colorado, or by the local prosecuting attorney, even though the Colorado court's order stated the mother was represented by the Colorado county attorney. " ' "Notwithstanding the collateral benefit to the custodial parent, the 'client' in such actions remains the county." [Citation.]' [Citation.] There is no attorney-client relationship created between the district attorney and the parent in such support actions." (29 Cal.App.4th at pp. 1457–1458.)

Louise was not notified of, present at, or represented at the January 2005 hearing. She is not bound by any stipulation between Charles's counsel and the Kansas court trustee made at that hearing. (28 U.S.C. § 1738B(c)(2); *In re Marriage of Ward, supra,* 29 Cal.App.4th at pp. 1457–1458; *County of Ventura v. Tillett* (1982) 133 Cal.App.3d 105, 112 [183 Cal.Rptr. 741].)

---

[7] As explained in detail *ante,* the Kansas court's order is not consistent with RURESA, which permits the initiating state to continue its own efforts to collect child support, offset by the amounts collected in any responding state.

## Disposition

The postjudgment order is reversed. Appellant County of Orange and respondent Louise E. Gerkin to recover costs on appeal.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.