823 P.2d 84

**Henry Carl POLACKE, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA; the Honorable Gloria G. Ybarra, a judge thereof, Respondent Judge,**

**Christine HAYWARD f/k/a Christine M. Polacke, Real Party in Interest.**

**No. 1 CA–SA 91–021.**

Court of Appeals of Arizona,
Division 1, Department A.

May 28, 1991.

Reconsideration Denied Aug. 2, 1991.

Review Denied Feb. 4, 1992.

Kenneth A. Winsberg, P.C., Phoenix, for petitioner.

Wilson, McConnell & Associates by Beverly J. McConnell, Phoenix, for real party in interest.

## OPINION

JACOBSON, Judge.

Petitioner (husband) brings this special action attacking the trial court's denial of his motion to dismiss for lack of personal jurisdiction in his former wife's action to determine child support arrearages.

The issue presented is whether an Arizona court has jurisdiction to entertain an action to determine child support arrearages under a domesticated foreign judgment, for the purpose of garnishing the support obligor's federal military retirement benefits pursuant to 42 U.S.C. § 659(a), when the obligor neither has minimum contacts with this state nor, he contends, any property located here. To determine this issue we must address whether the obligor's federal military retirement benefits can be considered constructively present in this state for purposes of establishing *quasi in rem* jurisdiction. We conclude that the trial court abused its discretion in denying the motion to dismiss this action.

### Special Action Jurisdiction

The general policy of our appellate courts is to decline jurisdiction when special action relief is sought from a denial of a motion to dismiss or a motion for summary judgment, because relief by appeal after judgment is usually an adequate remedy. *United States v. Superior Court*, 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985); *see also Alhambra School Dist. v. Superior Court*, 165 Ariz. 38, 40 n. 3, 796 P.2d 470, 472 n. 3 (1990). However, special action jurisdiction is appropriate when the

trial court's ruling cannot be justified under any rule of law, *King v. Superior Court*, 138 Ariz. 147, 149–50, 673 P.2d 787, 789–90 (1983), and when granting of special action relief will effectively terminate the litigation. *Lim v. Superior Court*, 126 Ariz. 481, 616 P.2d 941 (App.1980). Although any party who does not prevail on a motion to dismiss or for summary judgment may argue that special action relief would terminate the litigation, we believe this argument is persuasive when the motion to dismiss is based on an absence of jurisdiction, as an appeal inadequately remedies a trial court's improperly requiring a defense in a matter where it has no jurisdiction.

█ In this case, we conclude that the trial court had no *in personam* or *quasi in rem* jurisdiction to entertain this action against a nonresident support obligor with no assets located in Arizona. This case involves clear legal principles and no disputed material facts regarding the jurisdictional issue. Under these circumstances, we accept special action jurisdiction.

### Factual and Procedural Background

Husband and wife were divorced in Florida in 1978. Pursuant to the Florida decree, husband was ordered to make monthly child support payments of $200 per month for each of the parties' two minor children. The judgment also ordered the parties to split equally the children's medical and dental expenses not covered by insurance.

At the time of the divorce, both parties were residents of Florida. Wife and the children subsequently moved to Arizona, and husband currently resides in California. Husband has never lived or worked in Arizona, and claims to have no contacts with this state except that his minor children reside here. Wife does not dispute that husband has had no personal contacts with Arizona.

On November 21, 1988, wife domesticated the Florida divorce judgment by registering it in Maricopa County Superior Court pursuant to A.R.S. § 12–1702,[1] and sent notice to husband that she had filed the foreign judgment with the Arizona court, pursuant to A.R.S. § 12–1703.[2]

On September 27, 1990, wife filed in Maricopa County Superior Court a "Motion to Determine Arrearage and for Entry of Judgment," claiming that husband was in arrears in child support payments under the Florida judgment in the amount of $14,652.52, including interest, and was indebted to wife for one-half the children's unreimbursed medical and dental expenses in the amount of $1,184.19. The motion was made pursuant to the Family Responsibility Act, A.R.S. § 12–2451 to 12–2461.[3]

On November 14, 1990, husband filed a "Motion to Dismiss Motion to Determine Arrearage and for Entry of Judgment," arguing that, because he had no minimum contacts with the state of Arizona, the court had no personal jurisdiction over him, and that subjecting him to an Arizona arrearages judgment would violate the due process clause of the fourteenth amend-

---

1. The Revised Uniform Enforcement of Foreign Judgments Act, A.R.S. § 12–1702 provides:

   A copy of any foreign judgment authenticated in accordance with the act of congress or the statutes of this state may be filed in the office of the clerk of any superior court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the superior court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a superior court of this state and may be enforced or satisfied in like manner.

2. A.R.S. § 12–1703(B) provides, in part:

   [T]he judgment creditor shall mail a notice of the filing of the judgment to the judgment debtor and shall file proof of mailing with the clerk.

3. Wife's motion requested priority pursuant to A.R.S. § 12–2461, which provides that actions pursuant to the Family Responsibility Act shall have priority over all other civil actions. Under that act, a party entitled to past due support may petition the court to obtain a written judgment for the full amount of arrearages, and then proceed through statutory wage assignment to collect on that judgment. A.R.S. § 12–2455; *see Pflum v. Pflum*, 135 Ariz. 304, 660 P.2d 1231 (App.1982).

ment of the United States Constitution under the principles announced by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). After the trial court denied his motion,[4] husband petitioned this court for special action review.

### Merits

■ Husband's contention that the Arizona courts have no personal jurisdiction over him because he has no minimum contacts with the state of Arizona is based primarily on the United States Supreme Court decision of *Kulko*. In *Kulko*, the Court held that a California court did not have the necessary *in personam* jurisdiction over a New York resident who had no contacts with California, other than that his children had moved there with his former spouse, to modify the custody or increase the child support awarded by a Haitian court that had jurisdiction over the parties at the time it entered the judgment, even though the wife and children were California residents and the wife had domesticated the Haitian decree as a California judgment. Finding no "minimum contacts" to establish *in personam* jurisdiction as required by *International Shoe, supra*, the *Kulko* Court held that "the exercise of such jurisdiction would violate the Due Process Clause of the Fourteenth Amend-

ment." 436 U.S. at 86, 98 S.Ct. at 1693. The Court noted, "It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." *Id.* at 91, 98 S.Ct. at 1696, citing *Pennoyer v. Neff*, 95 U.S. 714, 732–33, 24 L.Ed. 565 (1878), and *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. The *Kulko* Court also noted that California's asserted interest in insuring child support for its minor residents was served by California's participation in the Revised Uniform Reciprocal Enforcement of Support Act,[5] which would allow a California resident claiming support from a New York resident to file a petition in California and have its merits adjudicated in New York, the state of the obligor's residence and the forum that would have personal jurisdiction over him.[6] 436 U.S. at 98–99, 98 S.Ct. at 1700.

In her response to the petition for special action, wife first argues that personal jurisdiction over a support obligor is not necessary to enforce the Florida judgment in Arizona. Wife argues that the judgment, entered when the Florida court had personal jurisdiction over the parties, being final and not subject to modification as to accrued child support installments, and having been properly domesticated in the Arizona court, is entitled to full faith and

---

4. The parties have not included in their special action exhibits either wife's response to the motion to dismiss or the trial court's minute entry ruling of January 9, 1991, denying the motion.

5. The Revised Uniform Reciprocal Enforcement of Support Act (referred to herein by its familiar acronym, "URESA") has been adopted by Arizona and is codified at A.R.S. §§ 12–1651 to 12–1691.

   The basic procedure under URESA requires the custodial parent to file a complaint for support in the state in which that parent and the children reside. A.R.S. § 12–1660. If sufficient facts establish a duty of support, the court in this state certifies the complaint and forwards it to the court in the state where the support obligor resides. A.R.S. § 12–1663. The prosecution of the case then proceeds in that state's court, which makes a new determination of the support obligation owed by its resident, and enters a judgment for arrearages. The judg-

ment can then be enforced in any county in which the obligor is present or has property. A.R.S. § 12–1673.

6. URESA is one of several alternative procedures available for collection of child support. *See* C. Smith, *Arizona Practice: Marriage Dissolution Practice*, § 272 at 277–81 (1988). By its own provisions, the remedies available under URESA are not exclusive, but are "in addition to and not in substitution for any other remedies." A.R.S. § 12–1652. In this case, wife did not proceed through URESA, but filed her action under the provisions of the Family Responsibility Act, in which the action is initiated and decided in an Arizona court. Under that act, any judgment for child support may be enforced as a matter of right by execution, attachment, garnishment, levy, appointment of a receiver, provisional remedies, or any other form of relief for enforcement of civil judgments. A.R.S. § 12–2455(A).

credit in Arizona and is enforceable here regardless of whether husband has minimum contacts in Arizona.

■ ·We agree with wife that the relief sought here is different from what was sought in *Kulko.* In *Kulko,* the California court attempted to entertain an action that would impose a new duty or obligation on the nonresident obligor: modifying custody or increasing an existing support award. Such a proceeding requires *in personam* jurisdiction over the nonresident obligor to comport with due process. *See Kulko, supra; International Shoe, supra.* Thus, the domestication of a foreign decree in this state for the purpose of according it full faith and credit does not transfer the *in personam* jurisdiction of the foreign court to this state; therefore, Arizona courts may not *modify* a domesticated child support award in the absence of its own personal jurisdiction over the nonresident obligor. Such personal jurisdiction could only be acquired by the obligor's minimum contacts with Arizona. *Garlitz v. Rozar,* 18 Ariz.App. 94, 500 P.2d 354 (1972); *see also Danis v. Ziff–Davis Publishing Co.,* 138 Ariz. 346, 674 P.2d 900 (App.1983) (the filing of a foreign judgment is nothing more than a procedure to give full faith and credit to the judgment of a sister state, but because it does not give substantive rights, personal jurisdiction is not transferred to Arizona by perfecting the judgment here).

In this case, however, unlike in *Kulko,* wife has not requested that an Arizona court do anything more than determine the amount of and enforce an existing valid foreign judgment entered by a state that had *in personam* jurisdiction when it entered the support award. Wife points out that such a proceeding is not one *in personam,* but is a *quasi in rem* action that does not require the obligor to have minimum contacts in the state.[7] To support her position, wife primarily relies on this court's decision in *Huggins v. Deinhard,* 134 Ariz. 98, 654 P.2d 32 (App.1982). In *Huggins,* this court held that a California judgment for payment of child support was entitled to full faith and credit as to past due, nonmodifiable payments against a nonresident obligor who had a bank account in Arizona. *Id.* at 101–02, 654 P.2d at 35–36.

Husband contends, however, that because the amount of the arrearages is disputed and not liquidated, an Arizona court can only calculate the amount of the judgment to be enforced if it acquires personal jurisdiction over the obligor. We rejected a similar argument in *Huggins:*

> The law is clear in circumstances such as the present case that a divorce decree ordering child support must be afforded full faith and credit as to those payments that have accrued and are not subject to modification.... The courts uniformly support this position.... *Nor is this rule changed simply because the rendering state has not adjudicated the amount due under its decree.*

*Id.* (citations omitted). Here, as with the California judgment in *Huggins,* unpaid child support payments under the Florida judgment are final and not subject to modification when accrued. Fla.Stat. § 61.-14(5)(a)(1) and (3); *see Shufflebarger v. Schufflebarger,* 460 So.2d 982 (Fla.App. 1984). Under such circumstances, an Arizona court is not necessarily required to obtain *in personam* jurisdiction over a nonresident obligor, either to execute on the foreign judgment or to adjudicate the amount past due. *Huggins,* 134 Ariz. at 102, 654 P.2d at 36; *see also Lagerwey v. Lagerwey,* 681 P.2d 309 (Alaska 1984).

7. The United States Supreme Court has distinguished between *in personam* and *in rem* or *quasi in rem* jurisdiction as follows:

> If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated *"in personam"* and can impose a personal obligation on the defendant in favor of the plaintiff. If jurisdiction is based on the court's power over property within its territory, the action is called *"in rem"* or *"quasi in rem."* The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before the court.... "A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property...."

*Shaffer v. Heitner,* 433 U.S. 186, 199 and n. 17, 97 S.Ct. 2569, 2577 and n. 17, 53 L.Ed.2d 683 (1977) (citations omitted).

However, although personal jurisdiction may not be a prerequisite to determining the amount due, the support obligor must have assets located in this state to support at least *quasi in rem* jurisdiction. In *Huggins,* for example, this court found that the existence of the nonresident husband's bank account in Arizona justified the exercise of *quasi in rem* jurisdiction to enforce and collect past due child support payments ordered by a California court having *in personam* jurisdiction to impose that obligation, even though an Arizona court would not have jurisdiction to order or modify such a support award. 134 Ariz. at 103, 654 P.2d at 37.

The rule is well established that *quasi in rem* jurisdiction, or "attachment jurisdiction," can only be supported by the existence of property in the state. The *Restatement (Second) of Judgments* § 8 (1982) provides:

> (1) A court may exercise jurisdiction to seize property whose situs is in the state, by attachment, sequestration, or similar procedure, in an action concerning a claim against the owner of the property if ... (b) [t]he action is to enforce a judgment against the owner of the property.

Comment a to section 8 explains:

> Jurisdiction is based on the fact that the property is within the territorial limits of the state in which the court is located. "Attachment jurisdiction," as it may be called, is based on the theory that a state has comprehensive authority over all property within its territorial limits and may seize such property for payment of claims asserted in actions in its courts.

Additionally, the Supreme Court has recognized that attachment jurisdiction may be exercised by a state in which the defendant has such contacts that he could be made a party to the action through either *in personam* jurisdiction or *in rem* jurisdiction. *See Shaffer v. Heitner, supra.*

We reject wife's contention, made for the first time at oral argument, that because this is merely an action to determine the amount of arrearages and because no enforcement of the judgment by garnishment has yet been sought, neither *in personam* nor *in rem* jurisdiction is yet required because the court has jurisdiction over the domesticated judgment. The jurisdiction to determine the amount of arrearages derives directly from the court's authority to enforce the judgment. *See Huggins, supra; see also Pinner v. Pinner,* 33 N.C.App. 204, 234 S.E.2d 633, 636 (1977) ("when the obligee attempts to enforce the order, the court must determine whether jurisdiction exists over the person or property of the obligor *and what amount, if any, is in arrears*") (emphasis added); *Glotzer v. Glotzer,* 112 Misc.2d 851, 447 N.Y.S.2d 603 (1982) (where enforcing court must make new findings of fact that nonresident obligor had failed to pay and that those arrearages totalled a specific sum for which further judgment would be entered, jurisdiction must first be acquired). Furthermore, wife admitted in her response to the petition for special action the following intent in these proceedings:

> And as Petitioner surmises, it is true that Respondent fully intends to enforce payment and satisfaction of the arrears in child support, by recourse, through garnishment or other means, to those retirement benefits.

Under the Family Responsibility Act, a party may first obtain a written judgment for the full amount of arrearages and then proceed to collect on that judgment. *See* footnote 3, *supra.* We decline to adopt a theory that different types of jurisdiction are required for each of these "phases," as wife suggests.

Wife further argues that, if *quasi in rem* jurisdiction is required, husband's military retirement benefits that are subject to garnishment through federal law support the existence of *quasi in rem* jurisdiction in this case.[8] Her position is that Arizona has *quasi in rem* jurisdiction because husband's military retirement benefits, concededly neither issued nor received

---

8. She makes no allegation that husband has other property located in this state that would be subject to attachment under the Family Responsibility Act brought in an Arizona court to satisfy a child support arrearage judgment.

in Arizona, are subject to garnishment for child support arrearages based upon the following federal law:

> Notwithstanding any other provision of law ..., moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

42 U.S.C. § 659(a) (1983). The purpose of this enactment was to remove the sovereign immunity bar of the United States and allow garnishment of salaries of federal employees who did not make support payments. *Parker v. Parker*, 335 Pa.Super. 348, 484 A.2d 168, 170 (1984). This section makes an obligor's military retirement pay subject to execution for child support arrearages. *See Ziegler v. Ziegler*, 107 Idaho 527, 691 P.2d 773, 785 (App.1985). It does not, however, increase the jurisdiction of the federal courts to inquire into matters of state law involving domestic relations, including the existence of personal jurisdiction, before honoring a state court garnishment order that is "regular on its face." *United States v. Morton*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). Indeed, some federal courts interpreting the section have concluded that, by requiring the issuance of legal process only by a "court of competent jurisdiction," § 659 does not allow a federal court to inquire whether the garnishment order was issued by a court having personal jurisdiction over the obligor. *See, e.g., Millard v. United States*, 16 Cl.Ct. 485 (1989), *aff'd*, 916 F.2d 1 (Fed.Cir. 1990). The power to garnish an obligor's wages or benefits under this statutory grant of authority is determined by the law of the state in which the garnishment order issues, not by federal law. *United States v. Morton, supra*. Thus, the question whether a nonresident obligor's military

benefits not issued nor received in this state are subject to garnishment through an Arizona *quasi in rem* attachment proceeding is a question of state law because that question cannot be collaterally attacked in federal court if the Arizona court orders garnishment under the Family Responsibility Act and 42 U.S.C. § 659.

Wife's position that an Arizona court has *quasi in rem* jurisdiction over husband's federal military benefits because they are subject to garnishment pursuant to 42 U.S.C. § 659 implicitly assumes that those benefits constitute property that is constructively present in Arizona. Such an argument has been considered and persuasively rejected by at least one state court. *See Williamson v. Williamson*, 247 Ga. 260, 275 S.E.2d 42 (1981), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). In *Williamson*, the plaintiff wife, a Georgia resident, attempted to enforce an Arizona child support award, domesticated in Georgia, against the California support obligor husband through Georgia's *quasi in rem* jurisdiction over the obligor's only "property" in Georgia, his United States Army salary that was not issued in Georgia. 275 S.E.2d at 43. There, as here, wife made no contention that husband had any other property in the state to support attachment jurisdiction, and did not establish any connection between his salary and the forum state. Her only argument, as here, was that the federal benefits constituted property within the state that could be garnished pursuant to 42 U.S.C. § 659(a) once the foreign decree had been domesticated. *Id.* at 44. The Georgia Supreme Court held that although the Arizona decree, being final and nonmodifiable, was entitled to full faith and credit in the Georgia courts through domestication, and, although personal jurisdiction over the nonresident obligor was not required to enforce the judgment against him, no *quasi in rem* jurisdiction would exist if the obligor had no property located in the state. *Id.* at 44–45. The court then construed 42 U.S.C. § 659(a), and concluded that it did "not provide that the salary of an armed services member is 'property' which is constructively present in every state of the Union." *Id.* at 45–46; *see also Nelson v.*

*Nelson,* 173 Ga.App. 546, 327 S.E.2d 529 (1985).

We find this reasoning persuasive and dispositive in this case. Wife cannot support the existence of *quasi in rem* jurisdiction to enforce a Florida judgment by garnishment of husband's military benefits that are neither issued nor received in this state, and she has not established any minimum contacts that would alternatively allow the Arizona court to subject a nonresident obligor to its personal jurisdiction.[9] Under these circumstances, we find that the trial court was without jurisdiction to entertain this action under the Family Responsibility Act. We note that alternative procedures are available to wife to pursue these claims under procedures that would afford husband due process in a forum in which he maintains minimum contacts. *See, e.g.,* URESA, *supra,* footnote 5. However, wife cannot constitutionally pursue her claim against a nonresident support obligor in a forum in which he maintains no such contacts or property merely by domesticating and seeking to enforce a valid foreign judgment against him. We therefore find that the trial court abused its discretion in denying husband's motion to dismiss. This matter is remanded for entry of a judgment of dismissal.

Husband has requested an award of attorneys' fees in this special action. In the exercise of our discretion, we deny the request.

Jurisdiction accepted, relief granted.

BROOKS, P.J., and CONTRERAS, J., concur.

---

**9.** Wife alternatively argues that husband "factually submitted himself" to the jurisdiction of the Arizona court by virtue of his statement in his motion to dismiss that "he has a legitimate defense to the claim of arrearage in that he has proof from the state of Florida ... that ... there was no arrearage." We reject that argument. Rule 12(b) specifically provides that "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." *See Mackey v. Spangler,* 81 Ariz. 113, 117, 301

P.2d 1026, 1029 (1956) (nonresident defendant did not waive issue of personal jurisdiction by joining his motion to dismiss for lack of jurisdiction with an answer on the merits); *see also Knox v. Knox,* 137 Ariz. 494, 496, 671 P.2d 935, 937 (App.1983) (appellee's appearance in a garnishment action, "solely to protect his income" and seeking no affirmative relief, did not constitute a "general appearance" that would have subjected him to the personal jurisdiction of the court).