IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. DES, *Petitioner/Appellee,*

TIFFANY G. TAYLOR,
*Petitioner/Appellant,*

*v.*

THOMAS PANDOLA,
*Respondent/Appellee.*

No. 1 CA-CV 15-0191 FC
FILED 9-29-2016

Appeal from the Superior Court in Maricopa County
No.  FC 2002-010919
The Honorable Veronica W. Brame, Judge *Pro Tempore*

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

COUNSEL

Tiffany G. Taylor, Scottsdale
*Petitioner/Appellant*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Petitioner/Appellee*

Katz & Bloom, PLC, Phoenix
By Jay R. Bloom
*Counsel for Respondent/Appellee*

**OPINION**

Judge Patricia A. Orozco delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen joins and Kenton D. Jones concurs in part and dissents in part.

**O R O Z C O**, Judge:

¶1        Tiffany Taylor (Mother) appeals the superior court's findings that she: was properly served with a notice of registration of Illinois child support orders (Notice) filed by Thomas Pandola (Father); failed to timely object to the Notice; failed to timely object to Father's allegation that he owed no child support arrearages; and must pay Father's attorney fees. For the following reasons, we affirm the findings that Mother was properly served with the Notice and failed to timely object to the Notice. We reverse the superior court's finding that Father owed no child support arrearages as of the date of the registration and vacate the award of attorney fees. Finally, we remand to the superior court for further proceedings consistent with this opinion.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        Mother and Father are the natural parents of a child who was born in 1999 when they were living in Illinois. Mother and Father first agreed that Father would pay $3000 per month in child support and an Illinois court so ordered in 2001. Mother and the child then moved to Arizona. Illinois retained jurisdiction over child support. In 2003, the Illinois court entered a stipulated order requiring Father to pay $6000 in arrearages to Mother and $2000 per month in ongoing child support. In May 2004, the Illinois court entered another stipulated order reducing Father's monthly obligation to $1200 (the May 2004 Order).[2]

---

[1]       "[W]e view the evidence in the light most favorable to supporting the [superior court] decision." *Cooper v. Cooper*, 167 Ariz. 482, 487 (App. 1990) (citing *Johnson v. Johnson*, 131 Ariz. 38, 44 (1981)).

[2]       This order is dated May 2004, but was filed in June 2004. For consistency, we refer to the order as the May 2004 Order.

¶3        In 2005, Father filed a request in Maricopa County Superior Court asking to modify the May 2004 Order and reduce his monthly obligation to $106.   After some legal skirmishes, Father and Mother submitted a stipulated order in Arizona agreeing the superior court had jurisdiction over the matter and requiring Father to pay support arrearages of $7146 and support of $900 per month commencing April 1, 2006.  Pursuant to another stipulation, the Arizona court ordered in 2010 that Father's obligation would be reduced to $655 per month.

¶4        Father filed another petition to reduce his support obligation in March 2013 and many filings and several court proceedings ensued.  The Arizona Department of Economic Security (ADES) became involved pursuant to Title IV-D.  Finally, on its own motion and without ruling on Father's modification request, the superior court asked the parties to brief whether subject matter jurisdiction over their child support issues was proper in Arizona.  Prompted by the court's order, ADES, Mother, and Father each averred that the Arizona court lacked jurisdiction until the operative Illinois order was registered in Arizona.  *See Glover v. Glover*, 231 Ariz. 1, 7, ¶ 23 (App. 2012).  The court so ordered and dismissed Father's March 2013 petition for lack of jurisdiction.

¶5        On August 14, 2014, Father filed the Notice in superior court, citing Arizona Revised Statutes (A.R.S.) section 25-1302 and attaching five separate support orders from Illinois, including the May 2004 Order that ordered Father to pay $1200 per month in child support.  On the same day, Father also filed a "Letter of Transmittal Requesting Registration and Enforcement of Foreign Child Support Order Pursuant to A.R.S. § 25-1302(A) and § 25-1309."  The letter cited two Illinois orders, the latter of which was the May 2004 Order.  At the same time, Father also filed a "Notice of Filing Respondent's Sworn Statement Re:  Child Support Arrears Pursuant to A.R.S. § 25-1302(A)(3) and Other Information Required Pursuant to A.R.S. § 25-1302(A)(4-5)."  In the attached sworn statement, Father averred that the May 2004 Order was the most recent and stated, "[Father] is not aware of any child support arrears owed to [Mother] in this matter."  Father served his three filings on Mother's counsel, who executed an acceptance of service on September 4, 2014.

¶6        On August 27, 2014, ADES filed its own arrears calculation, showing Father owed $375,790.50 in back child support.  Father objected, arguing ADES used the wrong Illinois order as the basis for its calculation.

On October 30, ADES filed an adjusted arrears calculation. Using a monthly obligation of $1200, ADES recalculated Father's arrearage at $540.[3]

¶7 Mother did not timely object to the Notice, but instead, on October 1, filed a response in support of ADES' initial arrearage calculation. On November 5, Mother finally filed an objection to Father's August 14 filing, arguing that it had been improperly filed and served, and requested a hearing as to the validity and enforcement of the Notice and order it sought to register. After an evidentiary hearing, the superior court found Mother was properly served on September 4 when her counsel accepted service on her behalf and that, as a result, Mother had until September 24, 2014, to file an objection but failed to do so. *See* A.R.S. §§ 25-1305.B.2, -1306.B. The court held that because Mother failed to timely object, she waived any objection both to confirmation of the May 2004 Order and also to Father's avowal that he owed nothing in support arrearages as of the date of the Notice.

¶8 The superior court then affirmed registration of the $1200 support award reflected in the May 2004 Order. As to arrearages, the court affirmed ADES' revised calculation and found that Father's child support arrears was "zero through August 14, 2014."

¶9 Father then filed an application for attorney fees and costs and requested sanctions, arguing Mother's challenge to the registration of the May 2004 Order was unreasonable. Mother did not timely respond and the superior court awarded Father $7000 in attorney fees.

¶10 Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1 (West 2016).[4]

**DISCUSSION**

¶11 On appeal, Mother argues that registration of the May 2004 Order should be set aside because Father's filing was legally insufficient and was not properly served; she also argues the court erred by precluding her from contesting the amount of arrears Father owed under the order. We

---

[3] ADES arrived at this number by deducting the $660 payment made by Father in September 2014 from the monthly obligation of $1200 as reflected in the May 2004 Order.

[4] Absent material changes from the relevant date, we cite a statute's current version.

defer to the superior court's "factual findings and will overturn them only if they are clearly erroneous." *Danielson v. Evans*, 201 Ariz. 401, 406, ¶ 13 (App. 2001). The application of statutes is reviewed de novo. *In re Reymundo F.*, 217 Ariz. 588, 590, ¶ 5 (App. 2008).

## I. The Notice of Registration

**¶12** An Arizona court lacks jurisdiction to enforce a child support order issued by another state unless the foreign order has been registered in an Arizona court. A.R.S. § 25-1301; *see Glover*, 231 Ariz. at 1, ¶ 1 (holding that "compliance with the registration requirements is necessary to confer subject matter jurisdiction on the court"); *Polacke v. Super. Ct. in and for Cty. of Maricopa*, 170 Ariz. 217, 222 (App. 1991) (finding that "[t]he jurisdiction to determine the amount of arrearages derives directly from the court's authority to enforce the judgment"). The procedures for registering a foreign support order are codified at A.R.S. § 25-1302, and require a party seeking registration to send a "letter of transmittal" to the Arizona court, attaching copies of the other state's support order, along with "[a] sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage."

**¶13** Mother argues the superior court erred in concluding Father complied with the statute because Father did not file all Illinois support orders entered in their case. *See* A.R.S. § 25-1302.A.2 (registration filing must include the foreign order and any modification of the order). As noted, however, Father's filing attached several orders from the Illinois court, and Mother provides no evidence of any Illinois order modifying the May 2004 Order.

**¶14** Although Mother also argues the Maricopa County Superior Court did not properly serve her with notice of Father's filings, *see* A.R.S. § 25-1305.A, her counsel accepted personal service of the filings on her behalf on September 4, 2014. We do not need to decide, therefore, whether the court clerk properly delivered copies of the filings to Mother. Given Mother's acceptance of service through counsel, the superior court did not err in finding Mother was properly served on September 4, 2014. *See* Ariz. R. Civ. P. 4.2(d)(4).

## II. Timeliness of Objection to Registration of the May 2004 Order

**¶15** Mother further contends the superior court erred in denying her objection to the Notice as untimely because her "Motion to Enforce Court Order," which she filed in April 2013, and her request for relief filed in June 2013 constituted her objection.

¶16 After one party's filing triggers the registration process, pursuant to A.R.S. § 25-1306.A, "[a] nonregistering party seeking to contest the validity or enforcement of a registered support order in this state shall request a hearing within the time required by § 25-1305." Section 25-1305.B.2 permits the nonregistering party to request a hearing "within twenty days after the date of . . . personal service of the notice [of registration]." When properly requested, the "registering tribunal shall schedule the matter for a hearing." A.R.S. § 25-1306.C.

¶17 Mother's contention that any pleadings she filed before Father sought to register the May 2004 Order preserved her objection to the Notice is unavailing. The language of the statute is clear; the objection must be to "the validity or enforcement of a *registered support order*." A.R.S. § 25-1306.A (emphasis added); *Simpson v. Simpson*, 224 Ariz. 224, 225, ¶ 6 (App. 2010) ("If the intent is clear and unambiguous from the plain language then we give it effect and do not use other methods of statutory interpretation."). Because Mother's April and June 2013 filings preceded Father's August 14, 2014 filing of the Notice, there was no "registered support order" to contest before that date and her prior filings did not operate as a preemptive challenge to the later-filed Notice.

¶18 Mother also argues that her October 1, 2014 motion in support of ADES' arrears calculation functioned as a timely objection to Father's registration because the affidavit of service her counsel executed on September 4 was not filed until September 11. But the twenty-day time period within which a party may challenge registration of a foreign order runs from service, not from the date of filing of any certificate of service. *See* A.R.S. § 25-1305.B.2 (providing that a contest to a notice of registration must be filed "within twenty days after the date of mailing or personal service"). Accordingly, Mother's deadline to object to Father's Notice was September 24, 2014.[5] Consequently, the superior court did not err in finding Mother failed to timely object to the Notice.

## III. Calculation of Arrears

¶19 Mother also argues the superior court erred by concluding that her failure to timely object to the Notice barred her from contesting

---

[5] Mother also contends her October 1, 2014 joinder to ADES' initial arrears calculation served as an objection to the Notice pursuant to A.R.S. § 25-1306.A. Because Mother's October 1, 2014 filing was not timely, we need not address whether it would have operated as an appropriate contest of Father's Notice. A.R.S. §§ 25-1305.B.2; -1306.A.

Father's avowal that he owed no child support arrears as of the date of the registration.

¶20 As stated, A.R.S. § 25-1302.A.3 requires a party registering a foreign support order to file a sworn statement of any arrearages that are due under that order. The superior court ruled that by failing to timely object to Father's Notice, Mother waived any objection to Father's assertion that no support arrears were due under the May 2004 Order. The court misconstrued the statute in holding that the deadline for objecting to registration of a foreign order also applies to (and limits) a nonfiling party's right to contest the other party's avowal of the amount of arrearages that purportedly have accrued under the foreign order.

¶21 Under A.R.S. § 25-1306.B, Mother's failure to timely object to the Notice plainly waived her right to contest confirmation of the *support order* Father sought to register. *See* A.R.S. § 25-1306.B ("If the nonregistering party fails to contest the validity or enforcement of the registered support order in a timely manner, the order is confirmed by operation of law."); *see Glover*, 231 Ariz. at 4, ¶ 10 ("If the non-registering party fails to contest the order within twenty days of service, it is confirmed by operation of law."). As a result, the May 2004 Order was confirmed by operation of law and the Arizona court acquired jurisdiction to enforce it.

¶22 But the statute does not impose the same consequences for a party's failure to object within twenty days to the other party's avowal about any arrearages purportedly due under the order submitted for registration. What is subject to confirmation under the statutes is the order, not the filing party's calculation of arrearages that may be due under that order. Once the foreign order is registered and confirmed, the Arizona court acquires jurisdiction to enforce the order by determining arrearages that may be due and enforcing payment of those arrearages. *See Polacke*, 170 Ariz. at 222.

¶23 Father argues, and the dissent agrees, that the twenty-day objection period specified in § 25-1305.B.2 applies not only to the foreign order sought to be registered, but also to the separate avowal of purported arrears that the filing party is required to file. But the language of the statute does not support that conclusion. As noted, § 25-1305.B.2 provides "[t]hat a hearing to contest the validity or enforcement of the *registered support order* must be requested within twenty days." (Emphasis added.). It makes no reference to any duty to seek a hearing to contest the validity of the filing party's declaration of arrears purportedly due under the order.

¶24　　　　Father points to § 25-1305.B.3, which provides that a failure by the nonfiling party to "contest the validity or enforcement of the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted." That provision does not support Father's assertion that the amount of *arrearages* claimed by the filing party is established as a matter of law if the nonfiling party fails to timely object to registration of the *order*. Indeed, under B.3, if the nonfiling party does not timely object, the result is "confirmation of the order" and "precludes further contest of that order with respect to any matter that could have been asserted." A.R.S. § 25-1305.B.3. But the statute does not say that a failure to object likewise results in confirmation of any arrearage amount posited by the filer or preclusion of the nonfiling party's right to object to that amount.

¶25　　　　Under the circumstances, we construe the reference in § 25-1305.B.3 to "alleged arrearages" to mean that a failure to object to registration of an order may result in enforcement proceedings to collect any arrearages specifically referenced *in that order*. Father's argument that a failure to object results in "confirmation of . . . the alleged arrearages" averred by the filing party reads a consequence into the statute that is not plainly stated, and we are reluctant to construe the statute to require such an onerous result when the statute plainly states that a failure to object will result in "confirmation of the order" and "preclu[sion of] further contest of that order," but does not plainly state the same result with respect to the filing party's separate avowal of arrears.

¶26　　　　This construction of the statutory scheme is consistent with its purpose, which is to establish a means by which Arizona courts may acquire jurisdiction to enforce support orders issued by other states. *See* A.R.S. § 25-1301 ("A support order or an income withholding order issued in another state or a foreign support order may be registered in this state for enforcement."). The registration process is routine, in that the foreign order "is registered when the order is filed" with the Arizona court, A.R.S. § 25-1303.A, subject only to a hearing, on request of the nonfiling party, "to contest the validity or enforcement of the registered support order," A.R.S. §§ 25-1305.B.2, -1306.A.

¶27　　　　The streamlined process by which an Arizona court acquires jurisdiction over a foreign support order is aimed simply at determining the validity of the foreign order, because once it is determined to be valid and current, it is subject to enforcement as if it were issued by an Arizona court. *See Lofts v. Super. Ct. in and for Maricopa Cty.*, 140 Ariz. 407, 410 (1984)

(stating that a "judgment validly rendered in one state's court [must] be accorded the same validity and effect in every other court in the country as it had in the state rendering it").  But when, as here, the foreign support order does not establish an arrearage amount due and owing, the order does not represent the foreign court's determination of arrearages as a finding of fact to which we must give similar full faith and credit.  Under the statutes, the amount of arrearages owed and coming due pursuant to and since the date the order was entered by the foreign court is a matter of fact to be determined by the Arizona court after taking evidence in due course, on a party's motion to enforce the order.  *See generally* A.R.S. § 25-1301.

¶28         The May 2004 Order Father registered reflects no arrearages as of that date.  Mother's failure to timely object results in confirmation that, *as of May 2004*, Father owed support in the amount of $1200 per month.  Under the statutes, Mother's failure to object to the Notice did not similarly bar her from contesting Father's avowal as to arrearages purportedly currently due under the May 2004 Order.  This construction is consistent with the plain language of the statute, which specifically requires an objection to the "validity or enforcement of the registered support order." *See Courtney v. Foster ex rel. Cty. of Maricopa*, 235 Ariz. 613, 615, ¶ 6 (App. 2014) (observing that statutes are interpreted using the plain language of the statute as the best indicator of the intent of the drafter).

¶29         If we assume, arguendo, that the language is ambiguous and the intent is unclear, we consider the context of the rule and statute, "its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994).  Statutes are to be construed "liberally," as necessary to "effect their objects and promote justice."  A.R.S. § 1-211.B.  In construing the statutes consistent with these principles, our interpretation is also consistent with Arizona's public policy mandating that parents financially support their children to alleviate the burden on public assistance programs. *State ex rel. Dep't of Econ. Sec. v. Demetz*, 212 Ariz. 287, 290, ¶ 10 (App. 2006).  At various times since May 2004, Mother contended she was not receiving support payments from Father and that, as a result, she was "receiving cash assistance, food stamps and state health insurance benefits."

¶30         We conclude the superior court erred in holding that Mother's failure to timely object to Father's Notice precluded her from contesting the amount of arrearages Father may currently owe under the May 2004 Order.

¶**31** The dissent argues that if a receiver of the support, in this case Mother, had registered an order and avowed that the provider, in this case Father, owed a substantial sum of arrearages and Father failed to object, the public policy we cite would bar Father from reopening the issue of arrearages. Nothing in the majority opinion, of course, would allow that scenario. Furthermore, we interpret the statute based on its language and context; public policy in favor of enforcement of child support obligations further supports our conclusion, but does not control our construction of the statute. In any event, the dissent misconstrues the policy to which we refer. The applicable public policy is not that child support payments should be maximized at all costs; it is that valid child support orders should be appropriately enforced consistent with due process, and our construction of the statute is consistent with that policy insofar as it allows the Arizona court to determine arrearages currently due once it properly obtains jurisdiction and after hearing evidence on the matter. Therefore, for the reasons stated above, we remand to the superior court to determine the amount of arrearages Father owes, if any, based on the May 2004 Order's mandate that he pay $1200 per month in support.

## IV.    Superior Court's Award of Attorney Fees to Father

¶**32** On appeal, Mother argues that, if we agree the superior court erred, we should vacate Father's award of attorney fees. Because we reverse the superior court's orders in part and are remanding to the superior court for a determination of arrearages, we vacate the award of attorney fees.

## V.    Attorney Fees and Costs on Appeal

¶**33** Both parties request an award of attorney fees and costs on appeal — Mother pursuant to A.R.S. § 12-348.B (authorizing an award of attorney fees to the prevailing party in an action against government entities challenging the assessment of taxes) and Father pursuant to A.R.S. § 25-809.G (authorizing an award of attorney fees, under certain circumstances, in paternity proceedings). In our discretion, we decline to award fees to either party. Because both parties prevailed in part, neither is entitled to costs.

## CONCLUSION

¶**34** The orders of the superior court are affirmed in part and reversed in part and we remand to the superior court for further proceedings consistent with this opinion.

J O N E S, Judge, concurring in part, and dissenting in part:

¶35　　　　I agree Mother was properly served and failed to timely request a hearing following service of notice of registration of the Illinois child support orders.  However, statute dictates that, in doing so, Mother waived her opportunity to contest the arrears alleged by Father through the date of filing the registration documents.

¶36　　　　Pursuant to Arizona's version of the Uniform Interstate Family Support Act (UIFSA), A.R.S. §§ 25-1201 to -1362, "[a] nonregistering party seeking to contest the validity or enforcement of a registered support order in this state shall request a hearing," A.R.S. § 25-1306(A), which must be done "within twenty days after the date of mailing or personal service of the notice [of registration]," A.R.S. § 25-1305(B)(2).  Absent a timely request for a hearing, the order sought to be registered "is confirmed by operation of law."[6]  A.R.S. § 25-1306(B).  Once the order is confirmed, the non-registering party is "preclude[d from] further contest of the order with respect to any matter that could have been asserted at the time of registration."  A.R.S. §§ 25-1305(B)(3), -1308.  Notably, "the amount of any alleged arrearages" is a topic specifically identified as a matter that can be raised at a hearing to contest the enforcement of a registered support order. *See* A.R.S. § 25-1306(A).

¶37　　　　These statutes are unambiguous, and we must apply their terms as written.  *See Berndt v. Ariz. Dep't of Corr.*, 238 Ariz. 524, 528, ¶ 11 (App. 2015) (citing *Fleming v. Ariz. Dep't of Pub. Safety*, 237 Ariz. 414, 417, ¶ 12 (2015)).  The majority incorrectly interprets the phrase "alleged arrearages," which appears in every section of the UIFSA cited above, to mean only those arrears that have been documented in a foreign order and presented to the registering court for confirmation.[7]  This interpretation runs contrary to the commonly understood meaning of the word "alleged," which is used to describe assertions that have *not* been proven.  *See, e.g.,*

---

[6]　　　"Operation of law" is defined as "[t]he means by which a right or a liability is created for a party regardless of the party's actual intent." Black's Law Dictionary (10th ed. 2014).

[7]　　　Alternatively, the majority incorrectly asserts that Father's registration documents indicated only that there were no arrears as of the 2004 order.  *See supra* ¶ 22.  Father, however, specifically averred within his registration request that he was "not aware of *any* child support arrears owed to [Mother] in this matter."  (Emphasis added).

The Am. Heritage Dictionary 46 (5th ed. 2011) (defining "alleged" as "[r]epresented as existing or as being as described but not so proved"). If the legislature intended the statute to encompass only those arrearages that have been proven and memorialized in an order, it would have done so. Moreover, interpreting the UIFSA to authorize confirmation of the foreign support order only, and not the amount of alleged arrears, impermissibly disregards the direction of A.R.S. § 25-1308, which "precludes further contest of the order with respect to any matter that could have been asserted at the time of registration." *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143, ¶ 10 (2008) ("We construe related statutes together, and avoid interpretations that render statutory provisions meaningless, unnecessary, or duplicative.") (citing *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122 (1970), and then *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 379 (1985)).

¶38 Nor can I agree with the majority's reliance upon what is otherwise the sound public policy of requiring parents to provide financial support to their children to bolster its position. Here, the *receiver* of support failed to object in a timely fashion and, by statute, waived her right to argue arrears. Thus, the public policy argument proffered serves the majority well by justifying its decision to allow Mother additional time in which to reopen the matter and establish the existence of arrears that would otherwise be foreclosed. But, this public policy argument is not uniformly applicable. For example, had it been the receiver of support to register the support order alleging the provider owed a substantial amount of arrears, and the *provider* had failed to object in a timely fashion, that same public policy aimed at preventing the burden on public assistance programs would dictate an interpretation of the unambiguous language of the statute that foreclosed any attempt to reopen the issue of arrears. I cannot subscribe to an interpretation of the statutes that leads to such incongruous results. Nor is justice served by rewarding persons who sleep on their rights by providing additional opportunities specifically precluded by statute to the detriment of those who follow the specifically articulated provisions of that same law. *See Phx. Title & Tr. Co. v. Old Dominion Co.*, 31 Ariz. 324, 336 (1927) ("Equity favors the diligent and not those who sleep on their rights.").

¶39 Under the plain language of the UIFSA, absent a timely objection, the Illinois order was confirmed by operation of law, and Mother

was precluded from later objecting to any matter that could have been asserted at the time of registration, including the amount of arrears alleged by Father. I would affirm the orders of the trial court in their entirety.

